## DORA MURPHY *v.* THE SOUTHERN LIFE INSURANCE COMPANY.

PRINCIPAL AND AGENT. *Act of agent binding on principal, though in excess of his limited powers. Insurance.* Where the local agent of a Life Insurance Company received *part* of an annual premium due on a policy, receipting for so much, and giving time on the balance. It follows, that, although he was acting in excess of his limited powers, and in violation of his special instructions, yet, as he was then acting within the apparent scope of his employment as agent of the Company, his action amounted to a waiver of the condition of prepayment of the premium, and is binding on the Company. Character and extent of powers of "local agents" inquired into at length.

Case cited : Bouton *v.* The American Mutual Life Insurance Company, 25 Conn., 342; Murphy *v.* Mutual Benefit Life Insurance Company, 103 Mass., 78; Baptist Church *v.* Brooklyn Fire Insurance Company, 19 New York, 305; Goit *v.* National Protection Insurance Company, 25 Barb., 180; Bliss on Life Insurance, ?277. p. 539–465; Flanders on Fire Insurance, 104; Story on Agency, ?58.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court. E. H. EAST, Chancellor.

N. &. ED. BAXTER for the Company.

ALEXANDER CAMPBELL for Murphy.

NICHOLSON, C. J., delivered the opinion of the Court.

This case was determined in the Chancery Court, at Nashville, upon an agreed state of facts made up

in pursuance of the Statute. The question involved is, whether the Insurance Company is responsible to complainant for the amount of a policy issued to Barney Murphy on the 11th of March, 1867. The policy was issued, insuring the life of Barney Murphy for the use of his wife, Dora, and children, in the amount of $1,000, for the term of his natural life.

It is expressed in the face of the policy, that it was issued in consideration " of the sum of $24.72, to them in hand paid by Dora Murphy, wife of Barney Murphy, and of the sum of —— dollars and —— cents, to be paid on or before the —— day of ——— next, and note at twelve months from the date thereof, for $16.48, with interest paid· in advance, and of the annual premium of $41.20, to be paid on or before the 11th of March (or half, or quarter yearly, in advance, with interest) two-fifths of said note paid, as aforesaid, in every year, during the continuance of this policy."

It is also recited in the policy, that " it is also understood· and agreed, by the assured to be the true intent and meaning· hereof, that, in case the said. premium shall not be paid on or before the day hereinbefore mentioned for the payment thereof, then, in any such case, the said Company shall not be liable for the payment of the sum assured, or any part thereof; and this policy shall cease and determine. And it is further agreed, that, in every case where the policy shall cease, or become, or be, null and void, all previous payments made thereon shall be forfeited to the said company."

Dora Murphy *v.* The Southern Life Insurance Company.

The facts agreed on are as follows: Barney Murphy died on the 25th of January, 1870. The premium for the first and second years of the policy was duly paid, but for the third year, when the assured died, it had not, all been paid, but paid only in part, to-wit: $11. This sum was paid to W. Matt Brown, who, at the time, was the local agent of the Company at Nashville, where the policy was issued, and where Murphy lived and died. Brown, from time to time, called upon Murphy to pay the balance of the premium, but he failed to do it. It is agreed that Brown did not pay the $11 over to the Company, but this was unknown to Murphy; also, that at the time of the payment of the $11, he told Murphy that if he did not pay the balance, the policy would be forfeited. It was further agreed, that a circular issued by the Company in 1868, was received by Murphy, and that Brown gave Murphy a receipt for the $11. This receipt, however, is not in the record, nor is there any proof as to its date or its terms. In the circular referred to, dated, " Office Southern Life Insurance Company, Memphis, Tennessee, ———, 1868," the following passages occur:

" Persons who wish to guard against the contingencies to which all are liable, by getting a policy of insurance, are referred to the agent of the Company, if one has been appointed in your neighborhood."

" All policies non-forfeited after the second annual payment."

It may be inferred from a notice exhibited in the

agreed state of facts, that it was the habit of the Company to issue from its office at Memphis, a notice to each person assured, notifying him in advance, of the amount of cash premium, and when to be paid, and the amount of the premium note.

It appears, further, from another exhibit, that the office at Memphis prepared receipts, stating the amount received from the assured for premium on policy, giving its number and amount insured to the end of the next year. These receipts were sent to the local agents in advance of the day for payment, regularly signed by the Secretary at Memphis, as of the date of the payment, but with this condition annexed : " Not binding until the amount is paid on this receipt, countersigned by W. Matt Brown, agent at Nashville."

These were all the facts submitted to the Chancellor. He was of opinion that complainant was not entitled to recover, and decreed accordingly. From this decree complainant has appealed.

The first inquiry that presents itself is, how did Brown and Murphy understand the transaction between them, when Murphy paid and Brown received the $11 ? It does not appear when this transaction occurred, but we may safely assume that it was either on the 11th of March, 1869, when the premium was payable, or after that time.

When the payment of $11 was made and receipted for, Brown told Murphy that " if he did not pay the balance, the policy would be forfeited." It is clear that Brown did not consider the policy already for-

feited, but his understanding was, that, whether it would or would not be forfeited, depended upon the future payment of the balance of the premium. That this was his understanding, is made clearer by the fact that, from time to time, afterwards, he called upon Murphy for the balance. The understanding, then, of Brown and Murphy was, that Brown had a right to keep the policy alive after the 11th of March, 1868, by accepting $11 of the premium, and collecting the balance afterwards. In other words, the transaction shows that Brown understood himself as having the right to waive the forfeiture arising from non-payment of the premium, by receiving payment of a part and making the forfeiture depend upon the payment or non-payment of the balance of the premium. Hence we see that Brown, regarding the question of forfeiture as superseded, retained the $11, but made no return of it to the office at Memphis, and no report of the transaction, so far as we can see, but from time to time, demanded of Murphy the balance. Before the expiration of the year Murphy died. Upon this view of the transaction between Brown and Murphy, the next inquiry is, was Brown authorized to waive the forfeiture, and by so doing, to bind the Company upon the policy? The character and extent of Brown's agency is necessarily involved in this inquiry.

We have been furnished with the written opinion of the Chancellor in the case, and we find that he considered the case of *Bouton* v. *The American Mutual Life Insurance Company*, 25 Conn., 342, as conclusive

of the question in this case. The case of *Bouton* v. *The American Mutual Life Insurance Company* was an action at law, determined in 1857. The policy sued on was, in its main features, similar to that in the case before us, except that the *testimonium* clause was as follows: "In witness whereof, the said American Mutual Life Insurance Company have, by their President and Secretary, signed this contract, this, 25th of February, 1851, but the same shall not be binding until countersigned by W. W. Webb, agent, and delivered, and the advance premium paid." The advance premium was payable on the first of July, 1852, but was not paid until after that time. It was paid to W. W. Webb. The Court below had instructed the jury, that, if the premium was paid to and received by Webb, as the agent of the defendants, in good faith, though the sum was paid after the 1st of January, 1852, they would find for plaintiff. Storrs, C. J., delivered the opinion of the Supreme Court. After laying down the doctrine, that, where policies of insurance contained a provision that if the advance was not paid on the day designated, the policy should be forfeited; as the provision was inserted for the benefit of the insurers, it was only void at their election, and therefore, that they might waive a strict compliance with it, after the time stipulated for the payment of the premium, or the reception by them or their authorized agent, of the premium for that purpose, after that time, would have the effect of reviving and continuing the contract, evidenced by the policy, as

though it had been strictly complied with by the assured, the Chief Justice proceeded to the question, whether Webb had authority, after the 1st of January, 1852, to receive payment so as to bind the Company. He said that the only authority which Webb had was contained in the *testimonium* clause of the policy. that clause being that the contract " shall not be binding until countersigned by W. W. Webb, agent, and delivered, and the advance premium paid." The word " agent," added to Webb's name, considered with reference only to the said clause, imports no more than that he was the agent of the defendants, to do and co-operate in the things which it was therein provided should be done for the purpose therein mentioned, of making the contract binding. One of those things was the payment, by the insured, of the premium in advance to, and consequently its reception by him. The question now is, as to the extent of the authority which was thus conferred on Webb, in regard to the premium provided for in the contract. We think he was not empowered to receive any premium which was not paid according to the requirements of the policy, that is, in advance. That instrument was his sole guide in regard to what he should do under it." He concludes : " Our opinion is confined to the question as to the character and extent of Webb's authority, as deducible from the terms of the policy itself; leaving the plaintiff at liberty to prove expressly by extrinsic evidence, an authority to receive premiums after the time when they were made payable

by the terms of the contract, so as to revive it, or facts from which such an authority should be implied."

It thus appears that the Court held that Webb was only a special agent for the purpose of counter-signing the policy and receiving the payment of the premium in that case; and this conclusion was based upon the fact that he was simply designated "agent" for these purposes, with no other evidence than this as to his agency. But it is conceded, in the opinion of the Court, that if there was proof of facts from which an authority to receive premiums after the time they were made payable might be implied, then the forfeiture would be waived.

It is apparent that the Connecticut case differs from the case at bar in this; that in the former Webb was agent for the single purpose of receiving the advance premium in that particular case, and of countersigning the policy, but in the case before us the policy was not to be binding until the advance premium was paid to and the receipt countersigned by Brown, "agent at Nashville." This language indicates clearly that Brown was "agent at Nashville," and in the agreed facts it is stated that he was "local agent at Nashville." He was, therefore, not only agent in the particular transaction of receiving the advance premium from Murphy, and countersigning the receipt for the money, but he was the local agent of the Insurance Company at Nashville, to receive advance premiums and countersign certificates as well as to do all other things properly

belonging to the position of a local agent at Nashville.

It follows that the Connecticut case is not a controlling authority in the present case; but in this case the question depends, first, upon the extent of Brown's authority as a local agent to waive the payment of the premium in advance, and second, upon the legal consequence of Brown's acceptance of part of . the premium, and giving time to Murphy for the balance.

1. The main embarrassment in the case arises from the fact that there is nothing in the record defining with clearness the character of Brown's agency or the extent of his powers. There is enough to show that the principal office was located at Memphis, and that the contracts for insurance were there consummated by the execution of the policies, but that the delivery of the policies and the receipt of the premiums, and the countersigning thereof, previous to the delivery, were at least parts of the business of Brown, as agent at Nashville.

We think it may be fairly inferred that, in addition to these powers, Brown was to receive applications for insurance, to take the preparatory steps for forwarding the applications to the principal office, there to be acted on and consummated, as already stated. The term "local agent" conveys no other meaning than that of an agent at a particular place or locality; but whether such an agent has general or limited powers is not determined by simply calling him a "local agent."

In Bliss on Life Insurance, §277, it is said, "the agents of life insurance are scattered throughout the States in thousands. There are not only local agents appointed in nearly every city and village, but also so-called general agents, who have charge of an entire State or district, and whose actual powers are usually much greater than those of the local agents. The actual powers of such agents, both general and local, may be very different from their apparent powers, and it is therefore essential to remember that so long as the agent acts within the apparent scope of his authority the Company is bound by his acts, though they may be in excess of, or in violation of his real powers. An agent is, moreover, conclusively presumed to have not only the usual and ordinary powers of an agent engaged in the business for which he is appointed, but all the powers necessary and convenient in the execution of his authority." *Marky* v. *Mutual Benefit Life Insurance Co.*, 103 Mass., 78. Story on Agency, §§58 and 106.

It was said in the Massachusetts case, just cited, that the authority of an agent must be determined by the nature of his business and the apparent scope of his employment therein. It cannot be narrowed by private or undisclosed instructions, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers. " A special agent," says Mr. Story, §58, " properly exists where there is a delegation of authority to do a single act;

29—vol. 3.

a general agency properly exists when there is a delegation to do all acts connected with a particular trade, business or employment." "Under this definition," says Mr. Bliss, page 439, "the agents of Insurance Companies, who are scattered over the country (local agents,) would seem to be general agents, but not general agents to do all acts connected with procuring applications for insurance."

If we test the extent of Brown's powers as agent at Nashville, by the rules laid down in these authorities, we must hold that he had all the powers necessary and convenient for the execution of his authority, and that the extent of his powers must be determined by the nature of his business and the apparent scope of his employment therein. It was part, at least, of his business as agent, to receive premiums from persons having policies, for the purpose of continuing those policies from year to year; to receive such premiums even after the expiration of a year, and when the policies, by their terms, had determined and ceased, would be within the apparent scope of his employment; and, therefore, that the Company was bound by his acceptance of a partial payment after the time when the premium was payable.

2. In Flanders on Fire Insurance, 104, it is said, that "the general tending of the cases is, that the officers and agents of Insurance Companies may waive the usual condition that the premium must be paid before the policy shall be effectual, as well as any other condition in the contract intended for their bene-

fit, and if the assured is allowed to act upon the confidence of such waiver, the insurer is estopped to deny the fulfillment of the condition." (A long list of cases is cited as sustaining this proposition.)

Mr. Bliss, in his work on Life Insurance, p. 465, says: "There is a distinction between the powers of an agent after a policy has been issued, and before. He may well be held to have authority to bind the Company in connection with matters transpiring before or at the time of the issuance of the policy, and relating to it, but after the policy had been issued, his powers, as a general thing, are, so far as that policy is concerned, exhausted, unless he has the power to make a new contract. An agent, without authority to contract, has authority to waive payment of the premium, and to deliver the policy, giving a credit for the amount, though the policy provides that no policy shall be binding till the premium is paid, and this, even though the policy also provides that the agent has no power to waive any condition on it." This proposition is supported by reference to several late New York cases, which are in the list referred to by Mr. Flanders.

Among the cases so cited, is that of the *Baptist Church* v. *Brooklyn Fire Insurance Co.*, 19 N. Y., 305. Judge Comstock said: "In any subsequent agreement for a removal or continuation of the risk, it was competent for the parties to contract by parol, and to waive the payment in cash of the premium, substituting therefor a promise to pay on demand or at a

future day." In the conditions annexed, and forming a part of the contract in that case, it was set forth that no issuance, whether original or continued, should be considered as binding until the actual payment of the premiums.

Another one of the cases cited was that of *Goit* v. *National Protection Insurance Co.*, 25 Barb., 180. In that case it was held to be "the privilege of the insurers, if they elected so to do, to waive the condition making the actual payment of the premium a condition precedent to the binding efficacy of any insurance, as it was a provision inserted for their benefit, and in which they alone were interested. This waiver may be established by evidence of an express waiver, or by circumstances from which such waiver may be inferred, and it may be by the managers of the Company, or by a duly authorized agent, and as it was done by the latter in this case, it was obligatory on the Company."

These authorities, as well as others referred to, sustain the positions laid down by Flanders and Bliss, already quoted. It follows, that although Brown was acting in excess of his limited powers, and in violation of his special instructions, as indicated in the receipts prepared and sent to him when he received $11 from Murphy, and gave him the receipt therefor as part payment of his premium, giving time to pay the balance, yet, as he was then acting within the apparent scope of his employment as agent of the Company, his action amounted to a waiver of the condi-

tion of pre-payment of the premium, and was binding on the Company.

We are, therefore, of opinion that the decree of the Chancellor was erroneous, and the same is reversed, with costs of this Court and the Court below.