## INSURANCE COMPANY OF NORTH AMERICA v. LUKE H. BANKER.

Eastern Section.  February 23, 1929.

Petition for Certiorari denied by Supreme Court, April 13, 1929.

Johnson & Cox, of Knoxville, for plaintiff in error.

Jennings, Saxton & Wright and A. E. Mitchell, of Knoxville, for defendant in error.

SENTER, J. The parties will be referred to as in the trial court, Luke H. Banker, plaintiff, and Insurance Company of North America, the defendant.

This suit was brought on a fire insurance policy issued by the defendant through its Knoxville recording agency to plaintiff in the sum of $1500, covering on chicken incubators and other personal property, insuring plaintiff against loss or damage by fire from February 22, 1923, to February 23, 1925. At the time the property was insured it was located on the south side of Washington Pike, within the corporate limits of the City of Knoxville. At the time the fire occurred the property insured had been removed to another location further out Washington Pike. The premium had been paid. The property was destroyed by fire on April 27, 1924. The plaintiff, after the property was moved to the new location, procured three other policies of insurance covering on the same property through other insurance companies, aggregating $3000. In a few days after the fire occurred, plaintiff notified the other three insurance companies of the loss and furnished to these other three companies proofs of loss, and in due course the other three policies were paid. It appears that the plaintiff had placed the policy sued on in his lock box at his bank in Knoxville and by inadvertence or oversight had forgotten this policy until several months after the fire occurred. When he discovered the policy in his lock box he promptly took the matter up with defendant's local

agents in Knoxville, and also wrote the insurance company of the loss. He did not furnish sworn detailed proofs of loss within the sixty days period as provided in the policy, nor did he at any time furnish the defendant with detailed proofs of loss prior to the suit. The defendant acknowledged the receipt of plaintiff's letter, written several months after the fire, and denied liability on the policy on the ground that the property had been moved from the location where it was located at the time the policy was issued, and that no written removal permit had been given, and refused to pay the policy, or any part of the same.

It is the contention of plaintiff, by the pleadings and by his proof, that at the time he moved the property to the new location where it was at the time it was destroyed by fire, he called up defendant's agent in Knoxville, who had written the policy, and informed him by telephone that he was moving the property to the new location and desired to have the insurance policy continued so as to cover the property at the new location to which it was moved, and that the agent of defendant told him in the telephone conversation that it would be all right, and that he would be covered at the new location, and the notice of the removal was therefore accepted and consented to by the agent, who was acting within the scope of his agency as the agent of the defendant. The agent denied receiving any such communication by telephone or otherwise, from the plaintiff. And denied that he had been called upon to grant a removal permit, and denied that he had authorized the removal of the property to the location where it was at the time the fire occurred.

The defendant, by proper pleas to the declaration, denied liability on the policy, and denied that any permission had been given for the removal of the property, and denied that its agent at Knoxville was authorized to bind the defendant by parol agreement, and specifically plead the provision of the policy on the question of changes or alterations to be endorsed in writing on the policy. The defendant, by proper special pleas, also denied liability because of the failure of the plaintiff to comply with the provisions of the policy in the matter of furnishing sworn proofs of loss.

These questions and issues were properly presented by appropriate pleadings.

At the conclusion of plaintiff's evidence the defendant moved for a directed verdict in its favor, which motion was overruled, and at the conclusion of all the evidence the motion for a directed verdict by the defendant was renewed, and was likewise overruled, and the case was submitted to the jury, resulting in a verdict in favor of plaintiff for the amount of the policy, $1500, together with

interest from the date of the filing of the suit. A motion for a new trial was made by the defendant, which motion was overruled, and judgment rendered on the verdict of the jury for the sum of $1758.75, the amount of the policy and the interest thereon. No recovery was had for the statutory penalty also sued for.

From the action of the court in rendering judgment in favor of plaintiff and the denial of a new trial, the defendant has appealed to this court, and has assigned numerous errors. The errors assigned are too numerous to be separately discussed and disposed of, but insofar as the same may be necessary or proper to the determination of the questions presented, they will be referred to, under appropriate groupings.

There was some material evidence offered by plaintiff in support of his contention that at the time he moved the property from the location where it was at the time the policy was issued to the location where it was destroyed, that he called the office of the defendants insurance agents in Knoxville by telephone and notified the agent of the removal of the property and obtained the consent of the agent to move the property to the new location, and that the agent consented to the removal at the time the request was made and assured the plaintiff that the property would be covered under the policy at the new location. It is true that the agent denied receiving any such communication, but there being some evidence to support this contention of plaintiff the finding of the jury in favor of plaintiff on that question, concurred in by the trial judge, makes it conclusive on this court. This court cannot review the evidence to determine the weight or the preponderance if there is any material evidence to support the jury verdict.

However, it is the contention of the defendant that the alleged agreement by the defendant's agent being a parol agreement, and no written endorsement agreeing to the removal, the parol agreement would not operate to bind the defendant, and would be in conflict with the provisions of the policy, and not within the scope, or the apparent scope, of the agent's authority. This presents the first question to be considered and determined.

In this connection the defendant denies that its local agent in Knoxville was its general agent in the sense that such agent would be authorized to bind the company by a parol agreement to insure property in the name of the defendant, or to waive specific provisions in the policy, or to bind the defendant by a parol agreement consenting to the removal of the property and agreeing to continue the insurance in effect at the new location.

The commission issued by the defendant to its agent in Knoxville is very similar to commissions generally issued by insurance

companies to their local recording agencies, and a similar commission was considered and discussed by the court in the case of Continental Ins. Co. v. Schulman, 140 Tenn., 482. In that case the suit was on a parol contract of insurance alleged to have been made by the agents of the defendant insurance company, and the fire occurred some two months later, and no policy had been issued to the plaintiff. The question there made was with reference to the authority of the recording agents of the insurance company to bind the company by a parol contract of insurance. In that case, as in the instant case, it was insisted by the plaintiff that the agents of the insurance company were general agents, and being general agents would be acting within the scope of their agency to bind the company by a parol contract of insurance. On that subject the court said:

"The commission herein shows that the agents were authorized to effect insurance upon property in the vicinity of Fayetteville, 'to countersign, issue and renew policies of insurance, etc.', we think the phrase quoted indicated the manner in which the agents were authorized to effect insurance; that is, by countersigning, issuing, and renewing policies. No contracts of insurance were contemplated except such as were written and incorporated in written policies. . . .

"So we are satisfied that these Fayetteville agents had no express authority to bind defendant company by a parol contract of insurance. It is urged, however, in behalf of Schulman, that Cowen & Co. were general agents of defendant, and as such general agents had power to make oral contracts of insurance for and in behalf of the defendant covering property within the territory of said agents.

"It is undoubtedly true that a parol contract of insurance, in the absence of a statutory inhibition, is valid, Merchants Mutual Ins. Co. v. Lynam, 15 Wall., 664, 21 L. Ed., 246; Relief Fire Ins. Co. v. Shaw, 94 U. S., 574, 24 L. Ed., 291; Joyce on Insurance, Sec. 31; 14 R. C. L., 880, and cases collected in notes, 6 Ann. Cas., 524, and 69 Am. St. Rep., 143. . . .

"Our cases do not refer to local agents, such as Cowen & Co., as general agents. Murphy v. Southern Life Ins. Co., 62 Tenn., 440, 27 Am. Rep., 761; Duluth National Bank v. Knoxville Fire Ins. Co., 85 Tenn., 77; Aetna Life Ins. Co. v. Fowler, 110 Tenn., 720, 77 S. W., 937."

Speaking further on this subject in the same case it was said:

"In designating these representatives of the insurance companies as 'General Agents,' it was not intended to declare that they were to be regarded as substitutes for their principals,

empowered to transact all manner of business or to do everything their employers might have done.''

It was further said by the court after quoting from Murphy v. Life Ins. Co., 62 Tenn., 440:

''So although agents like Cowden & Co., are characterized as general agents, nevertheless, there are limitations in the power of such agents to bind their principals. They must act within the apparent scope of their authority.

''If an agent usually does certain things respecting his principals business, or perhaps if similar agents in the same business usually do like things, the doing of these things is apparently within the authority of such agents, regardless of their actual or express authority. If, however, the agent does a thing unusual or unheard of in his line of business, such thing is, of course, apparently beyond the scope of his authority. Hence, arises this rule of law: A general agent for the management of the business or property of his principal, has authority co-extensive in scope with the business entrusted to him, that is, he has implied authority to do in the business, or with the property, what is usual and customary to do in the business with the property of the same kind in the same locality; and in determining whether an act is within the scope of such an agent's authority, due consideration is to be given to such matters as the character of the business, the manner in which it is usual to carry on such a business, and the manner in which the particular business had previously been conducted. 2 C. J., 643.

''The apparent scope of an agent's authority is necessarily limited by the usage and practice obtaining in the conduct of the particular line of business in which he is employed. This is true whether he be the chief executive officer of a corporation (Bank v. Bank, 132 Tenn., 152, 177 S. W., 74) or a mere traveling salesman (Nixon Mining Drill Co. v. Burke, 132 Tenn., 481, etc.''

In the Schulman case, the court held that while the local agents would not be acting within the scope of their agency in making an oral contract of insurance so as to bind the company, the court considered and discussed the evidence in that case with reference to the usual custom for such insurance agents to undertake parol contracts of insurance binding their principal for the period between the application and the agent's first opportunity to write up the policy. In that case the proof showed that it was usual and customary for agents to put the insurance into operation by parol agreement and then promptly, or within one, two or three days, to write the

policy. However, in that case it appeared that no policy was ever written by the agents and the fire occurred about two months after the alleged parol contract, and the court held that such a length of time was unusual, and that there was no custom which would confer even apparent authority to bind the company for such a length of time.

The court did not in that case definitely decide the question as to whether the oral contracts or agreements of such agents to put the insurance into force even for the limited time between the taking of the application and the usual and ordinary time for writing up the policy, would be binding on the company, since it was not necessary to decide that question in that case, but the court did refer to the insurance statutes in force in Tennessee as indicating that uniformity in insurance required written contracts.

We are of the opinion that the case of Continental Ins. Co. v. Schulman, supra, definitely settles the question, in this state, that insurance agents such as defendant's agents in this case, in Knoxville, cannot make a binding parol contract of insurance, unless perhaps to continue or to put insurance into effect from the time of the application to the usual time generally required for writing the policy. But the question is whether this same rule would apply in the matter of granting a removal permit by oral agreement. If the same rule applies, then we think it clear that the oral agreement could have no binding effect on the defendant Insurance Company beyond the usual and customary period usually required and taken by insurance agents for writing the permit and delivering the same to the insured to be attached to the policy. This permit to be in the form of a written endorsement to be attached to the policy and a copy of the same sent to the insurance company by the agent, according to the provisions of the policy, and also the general custom and usual practice in such matters.

The distinction in the Schulman case and the case at bar, is, that, in the Schulman case the suit was brought on an alleged contract of insurance entered into between the plaintiff and the defendant insurance company through its local agents, and no policy was ever actually issued. In this case the policy had been written and delivered to the insured covering on the property destroyed, and the premium had been paid, and the policy had not expired and the suit is on that policy. Now, after the insurance policy was issued and before it expired, the insured removed the property to another location. Clearly, the removal of the property to another location from that at which it had been insured, without the permission of the company, and without an agreement on the part of the company to continue the policy in force at the new location, would have relieved the defendant insurance company from liability under the policy,

since it was insured against loss or damage by fire at the location and on or in the premises described in the policy, and at no other place. However, it is shown by the evidence that removal permits are generally granted on request and when so granted the insurance continues to cover on the property at the new location. It is also shown by the evidence that the request for permission to remove to a new or different location is frequently orally made and granted by the agent, but under this general custom the agent promptly, or within a reasonable time, one, two or three days, writes out the removal permit, in triplicate, mailing the original to the insured, or delivering it to him in person, to be attached to the policy, and mailing a copy to the home office of the insurance company, and retaining a copy for his files. In this case it is insisted, by appellant, that no written removal permit was ever given even under the evidence of plaintiff, and that even though it was the custom for insurance agents to orally grant the removal permit and to continue the insurance in force at the new location, that the plaintiff could not recover on the policy for the reason that the written permit was never issued, and that if such oral permission had been given by the agent, it could operate to bind the company only for the usual period under the general custom and usage, which would be limited to the two or three days as this record discloses that custom to be, and could not bind the company indefinitely unless the permit was granted in writing and authorized by the company. On the other hand, it is insisted by appellee that the agent of the defendant, in accepting the notice of the removal and in consenting to the removal to the new location, was acting within the scope of his authority, or the apparent scope of his authority, and his neglect to complete the transaction by writing the removal permit, could not operate to relieve the insurance company from liability. Numerous authorities are cited by appellee in support of this contention, among others the rule as stated in 26 C. J., Sec. 278, p. 228, which is as follows:

"Consent to Removal. The insurance is not forfeited by a removal of the property to a new location with consent of insurer or its authorized agent, although the property is not covered during transit to the new location. An agreement for such removal and for the continuance of the policy in force, is in effect a new contract and gives rise to a new risk. The fact that the rate of insurance is greater at the new location and that the insured does not pay or tender the additional sum does not release insurer from liability where insured agrees and holds himself ready to pay it. Ratification is equivalent to a prior consent, and where insurer is advised of a removal and fails to cancel the policy and return the unearned premium, its consent

to the removal will be presumed. So, where insurer renews the policy with knowledge of the removal the goods are still covered by it. Consent may be implied from acts of insurer even after loss. . . . Consent given by an unauthorized agent, or one not endorsed on the policy, when such endorsement is required, will not authorize a removal.''

When the above rule is analyzed, as we construe it, consent given by an authorized agent, even though not endorsed on the policy, continues the insurance at the new location.

An examination of the several cases cited by appellee in the brief discloses that they were cases in which the consent of the company was procured to the removal of the insured property, or as in the case of Williamsburg City Fire Ins. Co. v. Carey, 83 Ill., 453, where it is said, ''A ratification by the insurer, equivalent to prior consent to the removal of insured property, may be inferred by the company's failure to elect to cancel the policy with knowledge of its right to do so.'' In the case of Farmers Ins. Co. v. Burgett, 65 Ohio St., 119, 55 L. R. A., 825, it was simply held: ''The insured may recover upon a policy containing that stipulation, for the loss of chattels destroyed at a location to which they were removed with the insurer's consent, notwithstanding their previous removal to another location without such consent.'' The stipulation referred to contained in the policy sued on in that case, was to the effect that the policy would become void unless consent in writing is endorsed by the company on the policy if any change takes place in the location of the property. In that case it appeared that the insurer consented to a removal of the chattels to the location where the same were destroyed, but there had been a prior removal of the same property to another location from that at which it had originally been insured. Hence, the only point of decision in that case was that the fact that there had been a prior removal of the property without permission would not defeat a recovery where it appeared that the written permission had been granted to remove the property to the location where it was destroyed.

Under the rule as announced in 26 C. J., as above quoted, it would appear that the whole question is to be determined by the nature and extent of the authority of the agent.

In the rule above quoted it is said: ''An agreement for such removal and for the continuance of the policy in force is in effect a new contract and gives rise to a new risk.'' We think this is undoubtedly true. The policy sued on insured the property at a given location, and no other. The granting of a removal permit constituted a new contract and by which the property would be insured at a different location. The original contract could be kept in force so as to cover the property at the new location only by the consent of the

insurer. The policy provided how this should be done. It could be done only by a written endorsement placed on the policy by an authorized agent of the insurer. We think it clear under the record in this case that the agent was authorized to grant the removal permit under his agency commission. He could not make a parol contract of insurance, neither could he make a new parol contract so as to bind the insurer, except in the way and manner as provided by the policy or as fixed by custom. The custom of granting a removal permit by telephone conversation, or any other parol agreement, contemplated that the agent would, within the usual time and in the usual way and manner, prepare the written endorsement and either mail or deliver it in person to the insured within the usual time required, which would be, under the undisputed evidence in this record, not longer than three days, and more generally within one or two days. This was not done. The fire did not occur until about three months after the alleged notice was given to the agent, and during all that time the agent did not furnish the insured with a written removal permit, nor was it requested by the insured. While it is urged by appellee that the failure to furnish to the plaintiff the written endorsement was due to the negligence and inattention of defendant's agent, and that the insured had a right to rely upon the agent to protect the policy by the necessary and proper process, and that the defendant insurance company would be estopped to deny liability for a loss resulting from the negligent inattention of its agent to the business intrusted to him. This contention, while persuasive, yet overlooks the corresponding failure of the insured to follow up his telephone conversation requesting the removal permit by calling for the permit in writing within a reasonable time, and his failure to take any steps to see that his request had been complied with. The granting of the removal permit was a new contract of insurance, and as held in the Schulman case, supra, it is not within the scope, or the apparent scope, of the agent's authority to make a parol contract for insurance binding the insurance company, except as pointed out in that case, but not definitely decided, that such a contract could not be considered as coming within the authority of the agent, where the agent failed to put the contract in writing within the usual and customary time after the application is made. We are of the opinion that appellant could not be held liable by the parol agreement or contract of its agent, and especially under the facts of this case where it appears that the insured knew that the written endorsement had not been furnished him by the agent.

We are further of the opinion that the learned trial judge should have granted the motion for a directed verdict in favor of the defendant.

Numerous other assignments of error are made. Several of the assignments challenge the ruling of the court in admitting the evidence offered by plaintiff on the question of custom and usage of insurance agents similar to the agent of defendant in authority. We think this evidence is competent for the purpose for which it was offered and the assignments of error on those questions are overruled. We are also of the opinion that the assignments going to the question of the failure of plaintiff to furnish the proofs of loss within the time stipulated in the policy, cannot be sustained, for the reason that the defendant when first receiving notice of the claim made by plaintiff, denied any liability under the policy on the ground alone that written consent of the company had not been procured for the removal of the property from the location where it was insured to the new location where it was destroyed. It is well settled that a denial of liability for reasons other than a failure to furnish the proof of loss operates to waive that provision in the policy. 26 C. J., p. 406-411, May on Insurance, p. 1086-87; 3 Pickle, 341.

All assignments are overruled except the assignment hereinbefore sustained, and the questions presented by the assignments relative to the lack of authority of the agent of the defendant to bind the defendant by parol agreement or contract for the removal of the property. For the reasons above set forth we are constrained to reach the conclusion that the learned trial judge was in error in overruling defendant's motion for a directed verdict, and his failure to dismiss the suit.

It results that the judgment of the lower court is reversed and the suit is dismissed, at the cost of plaintiff and sureties on the cost bond. Appellee will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.