**TENNESSEE STORM WINDOW AND HARDWARE CO., INC., Appellant,**

v.

**NEWARK INSURANCE COMPANY et al., Appellees.**

Court of Appeals of Tennessee, Western Section.

Sept. 14, 1973.

Certiorari Denied by Supreme Court

March 4, 1974.

Charles H. Warfield, Richard A. Jones, Nashville, for appellant.

W. Ovid Collins, Jr., Nashville, for appellee Newark Ins. Co.

Hunter B. Short, Nashville, for appellee James Morrissey.

Lawrence E. Levine and W. Lee Corbett, Nashville, for appellee Mitchell Ins., Inc.

NEARN, Judge.

The suit below was one involving the question of the existence of insurance coverage for a fire loss. At the close of all the proof the Trial Judge directed a verdict in favor of all defendants.

The plaintiff has appealed with seven Assignments of Error. However, all the Assignments of Error present to us only the issue of whether or not the Trial Judge should have directed a verdict in favor of all or any one of the defendants.

In reviewing the Trial Court's action in directing a verdict, we must view the proof in the light most favorable to the opponent of the motion. If, in so viewing the proof, it appears that there is a material fact over which there is conflicting proof a motion for directed verdict cannot be granted and the matter must be submitted to the jury. D. M. Rose & Co. v. Snyder (1947) 185 Tenn. 499, 206 S.W.2d 897. It is only when the material proof is free from conflict does the issue become one of law for decision by the Court on those unconflicting facts. O'Brien v. Smith Brothers Engine Rebuilders, Inc. (1973 W.S.) Tenn.App., 494 S.W.2d 787.

Plaintiff corporation, Tennessee Storm Window and Hardware Co., Inc. is in the business of selling building supplies. It is owned by H. W. (Lefty) Hardcastle. The office and warehouse of Tennessee is located at 2181 Nolensville Road. Normally all supplies are stored at that address.

Defendant Newark Insurance Company carries a fire insurance policy on the building located at 2181 Nolensville Road and its contents.

Defendant James Morrissey was the agent through whom the Newark policy was written.

Defendant Mitchell Insurance Agency is the agency to which Morrissey later sold his insurance business.

In August, 1968, plaintiff's warehouse was filled to capacity and additional supplies were in the process of arriving. Lefty Hardcastle made arrangements to store these additional supplies in Earl Shacklett's barn. On August 16, 1968, the day that the first load of additional supplies arrived for storage, Mrs. Hardcastle, at her husband's instructions, called defendant Morrissey, whose name appears on the original policy issued by Newark, in an effort to obtain insurance on the additional supplies that were being stored at Shacklett's barn. The barn and contents burned on September 20, 1968, with a loss to plaintiff of around $10,000.00.

Plaintiff's pleadings sought recovery on two theories. The first being that it was covered by Newark under the original policy with an alleged orally agreed upon endorsement of August 16, 1968. The second theory being that if incorrect in the first theory, the agents were liable for negligence in their failure to have issued a new policy.

The plaintiff's proof did not conform to the second theory.

The telephone conversation that took place on August 16, 1968, between Morrissey and Mrs. Hardcastle is the pivotal point of this case. It is not denied that a conversation between Morrissey and Mrs. Hardcastle took place relative to additional insurance coverage. The question on appeal is whether or not there is a dispute as to any material part of that conversation.

On direct examination Mrs. Hardcastle testified that she called Morrissey because he was the agent who handled plaintiff's property and material insurance. Further,

that she advised Morrissey of the fact that the warehouse plaintiff had been using was full and that five truck loads of additional supplies had been purchased and were being placed in Earl Shacklett's barn and that plaintiff wanted to be covered for the additional supplies stored at the new location. She also stated that then Morrissey inquired as to the address of Shacklett's barn and she answered that it was at 2187 Nolensville Road. She further testified that then Morrissey told her "I am going out of town for the weekend, but I will have the lady in the office take care of it."

On cross-examination Mrs. Hardcastle testified that Morrissey asked her about the value of the incoming goods, to which she replied approximately $10,000.00.

Upon further cross-examination she testified that Morrissey did not ask her to call back and give any additional information.

No further contact was had between Mrs. Hardcastle and Morrissey until she reported the loss.

Morrissey testified that Mrs. Hardcastle called him and advised that new supplies were arriving; that they would be stored at Shacklett's barn and that she desired to have these goods insured. In his discovery deposition Morrissey stated that Mrs. Hardcastle wanted the coverage added to her policy. Morrissey further testified that Mrs. Hardcastle made no mention of the amount of coverage plaintiff desired and denied that he advised Mrs. Hardcastle that he would take care of it. It was Morrissey's testimony that he instructed Mrs. Hardcastle to call back when she had sufficient information so that coverage could be had and he would then take care of it. Further, that he left a penciled note with his secretary something to the effect that plaintiff wanted coverage on the new material and Shacklett's barn and orally instructed her that Mrs. Hardcastle would call back.

This conflict in the testimony, in our opinion, is a conflict on a material issue of fact which should have been determined by the jury. If Mrs. Hardcastle's testimony of events is accepted as true, we are of the opinion that such facts could be considered by a jury to be a meeting of the minds and a contract for increased coverage. On the other hand, if Morrissey's testimony of events is accepted as true, there could be no meeting of the minds and no coverage.

Counsel for appellee Newark, makes three main points in defense of the Trial Court's action. First, even viewed in the light most favorable to the plaintiff, the proof cannot warrant a finding of a contract to insure, as the necessary elements of such contract are lacking; such as proof of (1) the subject matter, (2) the risk insured against, (3) the commencement and period of risk undertaken, (4) the amount of insurance and (5) the premium and time of payment.

■ This argument overlooks the contention that Mrs. Hardcastle wanted increased coverage under the fire insurance policy already existing and in effect. She wanted additional coverage by an addendum. Therefore, elements (3) and (5) are accounted for by the policy. If Mrs. Hardcastle's testimony is taken as true, elements (1) and (4) are met by the proof. Element (2) is accounted for by both proof and policy.

■ T.C.A. § 56–705 provides that in all matters relating to the application for insurance or the policy, the soliciting insurance agent is regarded as the agent of the company issuing the policy. Counsel for Newark also argues that this code section is unavailable to plaintiff, as Newark had not voluntarily accepted the application from the agent for none had ever been presented by the agent to the company for the requested additional coverage and Newark had not voluntarily issued its policy.

We hold that T.C.A. § 56–705 is applicable. This case involves more than just an application for insurance. An original policy of insurance had been issued. Under the statute the agent who procures the

original policy remains the agent of the insurance company in all matters relating to the policy which, in our opinion, would include an increase or change in coverage.

■ It is thirdly argued that even if Mrs. Hardcastle did request coverage in the manner in which she testified, the burden was on the plaintiff to follow up on the request for coverage as Newark could not be held liable for Morrissey's negligent failure to follow up on Mrs. Hardcastle's call. For this proposition reliance is made on the case of Ins. Co. of N. A. v. Banker (1929 E.S.) 9 Tenn.App. 622.

We are of the opinion that the relied upon case can be logically and factually distinguished from the one *sub judice*. In Ins. Co. of N. A. v. Banker, supra, the insured had certain chattels insured at a specific location. The proof seemed to preponderate that the insured orally requested of the agent permission to remove the chattels to another location and the permission was orally granted. However, no written permission was issued by the agent. Three months after the removal, the chattels were destroyed at the new location. The Court held that there was no coverage. This conclusion was reached primarily on the basis that, according to the terms of the policy, the removal of the chattels from their specific insured location voided the policy and it ceased to exist. Therefore, a new policy of coverage had to be effectuated. The Court went on to reason that while an oral contract of insurance can be made in this State, its life span is only from the date of oral agreement until the policy can be normally written, that is, for two or three days according to the customs of the trade. Since the policy was not issued in that time, the burden was on the insured to see to it that the written permit or new policy was issued in a reasonable length of time and three months was an unreasonable length of time.

It should be noted that in the Ins. Co. of N. A. v. Banker case, supra, T.C.A. § 56–705 is not mentioned in the Court's Opinion. But, be that as it may, in the instant case the original policy was never voided nor did it cease to exist. The policy covering plaintiff's primary place of business and materials stored therein was in existence prior to, during and subsequent to the fire at Shacklett's barn. What plaintiff sought was a rider or endorsement thereon, not a cancellation and reissuance of the policy. Also, the time span in the instant case between the request for additional coverage under the policy and the loss is substantially less than three months.

Therefore, we are of the opinion that the Trial Court erred in directing a verdict for the defendant Newark, as the proof presented disputed material issues of fact for jury determination. Therefore, the Assignments of Error directed to the Trial Court's action in directing a verdict for Newark are sustained.

■ Under the proof of this case, viewed in the light most favorable to plaintiff, we find no error in the Trial Court's action in directing a verdict for the defendants Morrissey and Mitchell. If the position as advanced by Mrs. Hardcastle's testimony be taken as true, there would be coverage afforded by Newark under the policy. If there be coverage the agent cannot be liable for any loss to plaintiff, for there would be none. If Morrissey's view of events be taken as true, no meeting of the minds was ever reached and no agreement was made for additional coverage as Mrs. Hardcastle failed to call back and give the requested information. Plaintiff cannot have it both ways. The Assignments of Error attacking the Trial Court's action in directing a verdict as to Morrissey and Mitchell are overruled.

The result is that the cause is remanded for a new Trial as to the defendant Newark. Cost of appeal is adjudged against the defendant Newark and costs below will await the outcome of the new Trial.

Chancellor ALFRED T. ADAMS, Retired, of Nashville, Tennessee, by designa-

tion of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Judge KIRBY MATHERNE.

CARNEY, P. J., and ALFRED T. ADAMS, Retired, Special Judge, concur.