CO-OPERATIVE STORES CO. *v.* UNITED STATES FIDELITY GUARANTY CO. *et al.*

*(Jackson,* April Term, 1917.)

1. INSURANCE. Fidelity insurance. Action. Evidence.

In action on fidelity insurance bond, evidence and letters *held* to show that agent of defendant company changed the bond contract from one requiring strict proof as to fraud or dishonesty to one requiring proof only of merchandise shortage of an employee. (*Post, pp.* 620, 621.)

2. INSURANCE. Fidelity bond. Construction.

A schedule bond insuring the fidelity of the managers of retail grocery stores operated by insured corporation in four different States was a fidelity bond, and to be construed as an insurance contract. (*Post, pp.* 621, 622.)

Cases cited and approved: Railroad v. Fid. & Guar. Co., 125 Tenn., 690; Insurance Co. v. Dobbins, 115 Tenn., 239; Royal Ins. Co. v. Vanderbilt Ins. Co., 102 Tenn., 264; Anderson v. Fitzgerald, 4 H. L. Cas., 484; American Surety Co. v. Pauly, 170 U. S., 133; Railroad v. Fid. & G. Co., 125 Tenn., 690.

Cases cited and distinguished: Hunter v. Guaranty Co., 125 Tenn., 581; Green v. Guaranty Co., 135 Tenn., 121.

3. CONTRACTS. Written contracts. Modification.

After a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol, notwithstanding the contract itself provides that it cannot be subsequently modified. (*Post, pp.* 622-625.)

Cases cited and approved: Insurance Co. v. Fallow, 110 Tenn., 735; Pechner v. Phoenix Co., 65 N. Y., 195; Insurance Co. v. Wilkinson, 13 Wall., 222; Westchester Fire Ins. Co. v. Earle, 33 Mich., 153; Ins. Co. v. Norton, 96 U. S., 234; Pitney v. Glens Falls. Ins. Co., 65 N. Y., 25.

137 Tenn.—39

Co-operative Stores Co. v. U. S. Fid. & Guar. Co.

Cases cited and distinguished: De Rossett Hat Co. v. Insurance Co., 134 Tenn., 211; Am. Cent. Ins. Co. v. McCrea, Maury & Co., 76 Tenn., 524.

4. **INSURANCE.   Authority of agent.**

An insurance agency company advertising as general agents of a fidelity insurance company, having its office in the same city as the headquarters of a corporation operating retail grocery stores and representing that it had authority from the surety company to act as its general agent, had authority to change a schedule bond of the grocery store corporation, covering the fidelity of the managers of its retail grocery stores in four States, from a bond requiring strict proof of fraud and dishonesty to one requiring proof only of a manager's merchandise shortage.   (*Post, pp.* 625-632.)

Cases cited and approved:   Murphy v. Continental Life Ins. Co., 62 Tenn., 440; Southern Life Ins. Co. v. Booker, 56 Tenn., 606; Sugg v. Assurance Soc., 116 Tenn., 658; Markey v. Mut. Benefit Life Ins. Co., 103 Mass., 78; Ermentrout v. Girard Fire & Marine Ins. Co., 63 Minn., 305; Rivara v. Queen's Ins. Co., 62 Miss., 720; Phoenix Ins. Co. v. Boudre, 67 Miss., 620; Am. Cent. Ins. Co. v. McCrea, Maury & Co., 76 Tenn., 546; Life Ins. Co. v. Fallow, 110 Tenn., 730; Foresters v. Cunningham, 127 Tenn., 529.

Cases cited and distinguished : Life Ins. Co. v. Fallow, 110 Tenn., 720; Murphy v. So. L. Ins. Co., 62 Tenn., 440; Butler v. Maples, 76 U. S. 766; Walsh v. Hartford Fire Ins. Co., 9 Hun., 421.

5.   **APPEAL AND ERROR.   Objections below.**

Where plaintiff recovered in suit on fidelity insurance bond, defendant's assignment of error that the court of civil appeals erred in affirming the chancellor and in rendering judgment against defendant was too broad and general to be considered.   (*Post, p.* 632.)

6. **ACTION.   Stay.  · Pendency of prior action.**

In suit on fidelity insurance bond, it was not error not to stay the suit until the termination of litigation at another place between complainant and the alleged defaulter concerning his

shortage, in which suit the employee was attempting by cross-bill to recover a certain amount for stock which he alleged he had bought from certain agents of insured under alleged circumstances of fraud, there being no allegation of insolvency as to insured or the employee, and no reason being shown why the insurer did not file a cross-bill in the instant case or could not bring later an independent suit. (*Post, p.* 632.)

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —H. W. LAUGHLIN, Chancellor.

CARUTHERS EWING, for plaintiff.

R. P. CARY, for defendants.

MR. SPECIAL JUSTICE W. B. SWANEY delivered the opinion of the Court.

This suit was brought in the chancery court of Shelby county by complainant, a corporation owning some thirty to forty grocery stores in Tennessee, Mississippi, Arkansas, and Kentucky, against the United States Fidelity & Guaranty Company, hereinafter called the surety company, and S. M. Williamson & Company, Incorporated, hereinafter called the agency company, to recover the sum of $911.98 claimed to be due by reason of the default of one

Siler, who was manager of complainant's store at Jackson, Tenn.

A recovery was sought against the agency company alone upon the averment that it had acted as agent for the surety company in making an alleged supplemental contract, changing in some important particulars the terms of the written contract previously existing between complainant and the surety company, and should it develop that the agency company had no authority to represent the surety company, as claimed by the surety company, then it should be held liable for said loss upon the ground of fraud and bad faith. Complainant predicated its right to recover against the surety company upon a blanket indemnity policy issued by the surety company to it as a fidelity and guaranty company covering one Siler and numerous other store managers in the four States in the sum of $1,000 each and certain modifications alleged to have been made through the intervention of the agency company which by its terms included and covered the losses claimed against Siler.

Answers were filed by both defendants denying all material allegations of the bill. A jury was demanded by complainant, and certain issues of fact were duly tendered. By consent of parties the jury was waived, with the agreement that Judge Laughlin, who tried the case by interchange with the chancellor, should try the issues of fact, and his findings should have the same effect as the verdict of a jury.

Judge Laughlin found all the determinative facts against the surety company and entered a decree for the amount sued for, with interest and costs. The bill was dismissed as to the agency company. An appeal was prayed and perfected in due form to the court of civil appeals by the surety company, and that court affirmed the decree of the chancellor.

The case is before this court by *certiorari*. Five errors have been assigned to the action of the court of civil appeals. Three errors go to the single question as to the power of the agency company to bind the surety company in making the alleged changes in the bond or estopping said surety by its fraud and course of conduct in dealing with complainant. The fourth error is as follows:

"The court of civil appeals erred in affirming the chancellor and in rendering judgment against petitioner for $953, with interest and costs of suit."

The fifth error goes to the action of the court of civil appeals in sustaining the action of the chancellor in refusing to stay the suit until a litigation at Jackson, Tenn., between complainant and Siler about said shortage, it appearing that there was such a proceeding at Jackson wherein Siler was attempting by cross-bill to recover $1,000 for stock which he alleged he had bought from certain agents of complainant under alleged circumstances of fraud.

In order to understand the questions raised it is necessary to now state more in detail the facts as found by the chancellor and the court of civil ap-

peals, both of said courts concurring in the findings of fact as well as the conclusions of law.

Complainant corporation. had its chief office, in Memphis, and also one of its grocery stores, known as the Bank Grocery, was located there. The agency company was the general agent of the surety company at Memphis, where it had a departmental headquarters, with department counsel, although the exact territory of neither of said departments is precisely shown.

As before shown, complainant owned some thirty to forty grocery stores in different towns in four States, viz.: Tennessee, Mississippi, Arkansas, and Kentucky. At each of said stores complainant corporation had a manager to whom was consigned and charged at selling prices a stock of goods and from time to time additional shipments were made, as the exigencies of the trade required. All sales made by each manager were for cash. A separate account was kept with each store, and the manager was required to make daily reports of sales to complainant and remit each day the cash received from such sales. This method greatly simplified the bookkeeping of the complainant. At frequent intervals an auditor was sent to check up the merchandise on hand, and in this way it was comparatively easy to ascertain that all merchandise shipped to each store was on hand or accounted for.

In order to protect itself against loss, the complainant applied to the surety company for a bond,

covering some eleven or more of its managers. For some reason, not explained, it appears that the bond in question, covering one Siler, manager of the store at Jackson, Tenn., was obtained through an agent of the surety company at Meridian, Miss. Shortly after the bond was received at Memphis, Mr. Scruggs, the chief officer of complainant at Memphis, the main office of complainant, after examining said bond, discovered that it only protected complainant against ''pecuniary loss sustained by reason of fraud or dishonesty'' of its managers. It should be stated that this bond was what is known as a blanket indemnity bond, issued by the surety company as a fidelity and guaranty company, and that said surety had advertised that it issued all kinds and characters of fidelity and guaranty bonds. It should also be stated that said bond contained a proviso that none of its conditions should be deemed to have been waived unless the waiver be clearly expressed in writing over the signature of its president and secretary, or their duly authorized officer, and its seal thereto affixed.

During the latter part of July or the 1st of August, 1915, Mr. Scruggs examined said policy, and, recalling the method of carrying on said business and having doubts as to whether said policy was the one desired, took up the matter with Messrs. Williamson and Schley, officers of the agency company who were acting as general agents of the surety company at Memphis, said agency company being a cor-

poration. He explained fully the method of complainant's business, and expressed his doubts as to always being able to show by affirmative proof that a shortage of his managers in merchandise was occasioned by "fraud or dishonesty." He demanded a practical construction of said policy by the surety company, stating at the time that he was not willing to be compelled to prove that the loss was the result of fraud or dishonesty, and if the surety company persisted in such a construction of it, complainant did not desire to keep the policy, but would have it canceled, and obtain such a bond as it desired from a bonding company or individuals. Several interviews occurred between Mr. Scruggs and the officers of the agency company, and some letters passed between them, which will be later mentioned.

The first letter from the agency company to Mr. Scruggs stated explicitly that the agency company had taken up the matter with the surety company as to the kind of proof that would be required in case of loss under said blanket policy, and it stated that the surety company, as claimed by the agency company, would insist upon strict proof as to fraud or dishonesty. Thereupon complainant, through Mr. Scruggs, addressed a letter to the agency company again explaining his insistence, and demanding that the surety company accede to his demands as to proof of loss, and modify the policy. This letter is dated August 3, 1915, and is as follows:

"S. M. Williamson & Co., City.

"Attention Mr. Williamson.

"Dear Sam:

"I have your letter of the 2d, written by Mr. Schley, and it is entirely different from your statement to me over the phone. If you bonding people want to acknowledge nothing, and expect us to prove everything, frankly, I don't want the bond.

"How can we get a bond to guarantee us against dishonest managers if we have to prove they carried a piece of bacon home in their back pocket on a dark night before the moon was up? What we want a bond to cover. is this, and if your bond does not cover it, we want our money back and cut out the bonds:

"We have some thirty or forty managers, and our manner of doing business is this:

"We open a store in a small country town; employ a man to manage the store. We ship him merchandise at a fixed value, charging him the selling price for it, and he should either have the merchandise or the money. He reports to us his sales each day and sends a check for his sales each day.

"Now about every two or three months our auditor goes out there and takes stock, and if he is short we expect the bond to cover it. Now every time we ship this man a bill of goods, he received a bill of lading and bill for it, and if he don't get the goods, he reports, and we credit him and collect from the railroad.

"Now how could you expect us to prove that this man had stolen the money or the goods if they are

not there further than the above proof? If we have been paying your company for a bond without this protection, we might as well not have it.

"You understand that the average stock of merchandise that each store has is less than $1,000, and as we check these men up very frequently, the company really takes very little risk; in fact, I think we could well afford to have a $300 bond on each manager, because we ship him only as he sells goods, and if he don't report the sales and does sell the goods, he very soon runs out of goods.

"I make this explanation simply that you may know that the bond is one that in my opinion should be a very safe bond for a company to make, and that it is more for the moral reason that we carry the bond than for any other reason; but there is no need of us fooling ourselves in the belief that we have a man under bond, when we have to prove, according to your statement, that he stole the money, and I want to know if the proof we could give, as stated above, is proof in your mind. It certainly is for any fair-minded man, but I would like to hear from you, as a representative of your company, so I will know what to do, and your prompt reply will be appreciated.

"Yours very truly,          J. M. Scruggs."

Shortly after this Mr. Scruggs was notified on the streets of Memphis by an officer of the agency company that the surety company had agreed to modify

the schedule bond to his entire satisfaction, where-
upon he replied, ''Write me about it; don't tell me.''

On August 30, 1915, the agency company replied
to letter of August 3, 1915, as follows:

''Mr. J. M. Scruggs, Bank Grocery Co., S. Main St.,
      City.

''In re Schedule Bond Co-Operatives Stores Co.

''Dear Mr. Scruggs:

''Referring to our several conversations, and the
correspondence passing between us, concerning the
Schedule Bond for the Co-operative Stores Co.:

''This matter has now been adjusted to your entire
satisfaction, and there is a feature in connection with
the bond which I should like to call to your atten-
tion, and that is the matter of handling the bond
through this agency in Memphis. As I understand,
the headquarters of the store company is in Mem-
phis, the Bank Grocery Company is located here, and
you are supervising it from this town, and it would
seem to me it would be a considerably better proposi-
tion to handle this schedule bond and any changes
and additions to same through this agency.

''Won't you have the kindness to authorize us to
take care of the bond at the expiration of the present
one?

''Thanking you, we are, yours very truly,

                  S. M. WILLIAMSON & Co., Inc.,

                          ''CLINTON W. SCHLEY, Manager.''

Among the various issues of fact submitted to the
jury and found in favor of complainant and ap-

proved by the chancellor and the court of civil appeals, with reply by the jury, was the following:

"Q. Was the bond sued on retained by complainant by virtue of an arrangement and agreement with the bonding company that any merchandise shortage of a manager of one of complainant's stores would be treated as a liability under the bond, without regard to whether complainant could show such merchandise shortage was created in fraud or dishonesty?

"A. Yes, through its agent, its codefendant."

There is evidence in the record to show that the agency company was a general agent of the surety company, and this fact, coupled with the finding of fact by the jury, in response to the above issue of fact, which is also supported by the record, is conclusive upon the surety company.

These letters in and of themselves constitute a contract sufficient to sustain the present suit, omitting all oral testimony, which is entirely competent, and both together amply sustain the chancellor and court of civil appeals in the conclusion reached.

It will be noticed that this letter of August 30th shows that complainant company had its headquarters in Memphis, and also owned the Bank Grocery Company, located there, and that the agency company called attention to the fact that it would be "a considerably better proposition to handle the schedule bond and any changes and additions to same through this (Memphis) agency."

The Bank Grocery Company being in Memphis, and the schedule bond covering this manager and others in the four States, makes it necessary to disregard in such a case territorial jurisdiction of any one agent, and place all general agents in any and every town or city where one of these stores was located upon the same footing.

The proof as to loss is not disputed except inferentially. Upon these facts the court concludes that the bond in question is a fidelity bond, and must be construed as an insurance contract.

In *Hunter* v. *Guaranty Co.*, 129 Tenn., 581, 167 S. W., 694, it is said:

"It is well settled that a bond of this character is to be construed as an insurance contract, and its language, carefully considered and prepared by the company, in all cases of doubt is to be construed against the company. *Railroad* v. *Fidelity & Guaranty Co.*, 125 Tenn., 690, 148 S. W., 671; *Insurance Co.* v. *Dobbins*, 115 Tenn., 239, 86 S. W., 383; *Royal Ins. Co.* v. *Vanderbilt Ins. Co.*, 102 Tenn., 264, 52 S. W., 168."

In *Green* v. *Guaranty Co.*, 135 Tenn., 121, 185 S. W., 727, this principle is stated more fully by Mr. Justice WILLIAMS as follows:

"It is now well settled that such contracts are to be likened to contracts of insurance, and therefore they are not to be construed by the liberal principles applied to personal suretyship, but by the more exacting rules of the law of insurance. The language of the bond contract is that selected and employed

by the fidelity company issuing it for a consideration, and, when ambiguous or doubtful, must be given the strongest interpretation in favor of the person indemnified 'which it will reasonably bear. This rule of construction has been adopted both in England and in this country. *Anderson* v. *Fitzgerald,* 4 H. L. Cas., 484; *American Surety Co.* v. *Pauly,* 170 U. S., 133, 18 Sup. Ct., 552, 42 L. Ed., 977; *Railroad* v. *Fidelity & G. Co.,* 125 Tenn., 690, 148 S. W., 671.''

There can be no controversy but that a written contract may be modified after it is made by the express words of the parties in writing, as in the instant case, as well as by parol.

The recent case of *De Rossett Hat Co.* v. *Insurance Co.,* 134 Tenn., 211, 183 S. W., 723, states this doctrine as follows:

''An insurance contract, however, like any other contract, may be modified after it is made by the express words of the parties, or by the acts of the parties which evince a meeting of their minds in agreement to modify its terms upon any particular point.''

The case of *Insurance Co.* v. *Fallow,* 110 Tenn., 735, 77 S. W., 941, quotes with approval a former holding of this court in *Am. Cent. Ins. Co.* v. *McCrea, Maury & Co.,* 76 Tenn., 524, 41 Am. Rep., 647, viz.:

''A written contract may be changed by parol, and this although it stipulate that it shall only be

changed in writing, for the obvious reason that men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into. *Pechner* v. *Phoenix Co.*, 65 N. Y., 195; *Insurance Co.* v. *Wilkinson*, 13 Wall., 222, 20 L. Ed., 617. 'A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it.' Per CAMPBELL, J., in *Westchester Fire Ins. Co.* v. *Earle*, 33 Mich., 153. See, to the same effect, *Insurance Co.* v. *Norton*, 96 U. S., 234, 24 L. Ed., 689.''

Judge COOPER pertinently states in the above-quoted case (76. Tenn., 524, 41 Am. Rep., 647):

''A contract, express or implied, founded upon sufficient consideration, even though it be only by way of injury to one of the parties, would fall within these principles. And the cases go to the extent of holding that if the agent be authorized to do the act required by the condition, he may bind the company by his parol waiver. For it is in the nature of a condition precedent to be subject to waiver, and that may be either oral or in writing. *Pitney* v. *Glens Falls Ins. Co.*, 65 N. Y., 25.''

Coming now to a consideration of the principal assignment of error made here touching the lack of authority in the agency company at Memphis, S. M.

Williamson & Co., Incorporated, to act for and on behalf of the surety company with reference to the schedule policy in question, it must be borne in mind that this is not the ordinary case of a local agent whose territory is limited to a single city or county with limited powers, expressed or implied, writing and dealing with an ordinary policy covering property or persons located or living within said limited jurisdiction. The bond sued on is what is known as a schedule bond, and there is a list or schedule attached to the policy showing that some eleven additional managers are covered by it, embracing a territory covering more than one state, the schedule being attached to the Siler policy as a rider.

The policy was, as the proof shows, solicited by an agent at Meridian, Miss., but it was issued apparently from the home office, and there is nothing to show that it ever passed through the hands of any local agent, so far as appears from the policy itself. Siler's name appears in a rider designated as "Fidelity form 34 (Revised) acceptance of notice No. 8," which by its terms says:

"All appointments to any position and any increase in amount of security required of any employee appear as 'additions'; all removals, retirements or transfers of employees, and any decrease in amount of security required of any employee, appear as 'deductions.' It being expressly understood and agreed that the company's aggregate liability under all its bonds and engagements on any em-

ployee or employees shall not exceed the largest bond or engagement on said employee or employees.''

From this and other circumstances it thus appears that this policy was by its very nature subject to changes in the number, names, and amounts of insurance by way of additions and deductions, which made it necessary and proper for complainant to be in touch with the surety company. The headquarters of complainant being in Memphis, it was therefore very natural for its officers to seek information and ask for all necessary and proper changes in said policy at the hands of the agency company at Memphis, more especially as it was advertising as general agents of the surety company. It is quite significant in this connection that later on when complainant did have correspondence with the home office of the surety company about the Siler loss, the matter was referred to Mr. Wm. M. Hall, department counsel, having an office in Memphis, who took up the matter of adjustment with complainant. The agency company expressly held itself out as having full authority to represent the surety company in looking after ''any changes and additions'' in the policy sued on.

Under the peculiar facts of this case, the agency company having apparently as much authority as any general agent in this class of policies, the complainant having its general office in Memphis, as well

137 Tenn.—40

as one, at least, of its stores located there, it had a right to deal with the surety company through this agency company. The changes in the policy went only as to the proof of the loss, and amounted practically to waiving the necessity of showing a *prima facie* case of larceny or embezzlement. There is no doubt but that complainant was misled to its injury by the agency company claiming to act under express authority from the surety company, and under the facts of this case the surety company is liable to complainant for the fraud, misconduct, and negligence of said general agents.

It is not necessary to review the cases on the right of general agents to make changes and waive conditions in insurance policies, and we shall only advert to a few of the Tennessee cases bearing most directly upon the subject.

In *Life Ins. Co.* v. *Fallow,* 110 Tenn., 720, 77 S. W., 937, will be found an able and exhaustive treatment of the powers of general agents of insurance companies to bind their principals by any acts or contracts within the general scope of their apparent authority, and also their right to waive conditions, as well as the doctrine of estoppel where the assured has been led to rely upon the representations of general agents by a course of conduct upon which he has acted. In commenting on the cases, Mr. Chief Justice NEIL, at page 730 of 110 Tenn., at page 939 of 77 S. W., says:

"But in this State, the rule has been given a larger scope, and it has been held that a general agent may waive conditions. in the policy, and that the company will be thereby estopped to insist upon them in the enforcement of a forfeiture, when such agent acts within the apparent scope of his employment as agent of the company. *Murphy* v. *Continental Life Ins. Co.*, 3 Baxt., 440, 27 Am. Rep., 761; *Southern Life Ins. Co.* v. *Booker*, 9 Heisk., 606, 24 Am. Rep., 344."

See, also, *Sugg* v. *Assurance Society*, 116 Tenn., 658, 94 S. W., 936.

In *Murphy* v. *Southern L. Ins. Co.*, 62 Tenn., 440, 27 Am. Rep., 761, W. Matt Brown was local agent of the company at Nashville, Tenn., where the policy was issued and where the assured lived and died. Premiums for the first and second years of the policy had been paid, but on the third year, when the assured died, the premium had only been paid in part, to wit, the sum of $11. This sum of $11 had been paid to Brown, local agent at Nashville. Brown from time to time called upon Murphy to pay the balance of this premium, but he failed to do it. Brown failed to pay the $11 over to the company, but this was unknown to Murphy. The receipts were prepared for the company at Memphis and sent to local agent in advance of the day of payment, regularly signed by the secretary at Memphis. The policy showed on its face that the annual premium was $41.20, to be paid on or before March 11th, and

upon failure to pay the premium the policy should become null and void. Murphy died after having defaulted in paying the balance of the annual premium. The sole defense made was the want of authority in the local agent at Nashville to extend credit to Murphy.

NICHOLSON, C. J., delivered the opinion in this case, and held the company liable upon the ground that the local agent was acting within the apparent scope of his employment as agent of the company, and his action in extending credit to Murphy amounted to a waiver of the condition of prepayment of the premium, which was binding upon the company.

The following excerpts from the *Murphy Case, supra,* are pertinent:

"1. The main embarrassment in the case arises from the fact that there is nothing in the record defining with clearness the character of Brown's agency or the extent of his powers. There is enough to show that the principal office was located at Memphis, and that the contracts for insurance were there consummated by the execution of the policies, but that the delivery of the policies and the receipt of the premiums, and the countersigning thereof, previous to the delivery, were at least parts of the business of Brown, as agent at Nashville.

"We think it may be fairly inferred that, in addition to these powers, Brown was to receive applications for insurance, to take the preparatory steps for

forwarding the applications to the principal office, there is to be acted on and consummated, already stated. The term 'local agent' conveys no other meaning than that of an agent at a particular place or locality; but whether such an agent has general or limited powers is not determined by simply call- ing him a 'local agent.'

"In Bliss on Life Insurance, section 277, it is said: "The agents of life insurance are scattered throughout the States in thousands. There are not only local agents appointed in nearly every city and village, but also so-called general agents, who have charge of an entire State or district, and whose ac- tual powers are usually much greater than those of the local agents. The actual powers of such agents, both general and local, may be very different from their apparent powers, and it is therefore es- sential to remember that so long as the agent acts within the apparent scope of his authority the com- pany is bound by his acts, though they may be in ex- cess of, or in violation of, his real powers. An agent is, moreover, conclusively presumed to have not onl- the usual and ordinary powers of an agent engaged in the business for which he is appointed, but all the powers necessary and convenient in the execution of his authority.' *Markey* v. *Mutual Benefit Life In- surance Co.,* 103 Mass., 78; Story on Agency, sec- tions 58 and 106.

"It was said in the Massachusetts case, just cited, that the authority of an agent must be determined

by the nature of his business and the apparent scope of his employment therein. It cannot be narrowed by private or undisclosed instructions, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers. 'A special agent,' says Mr. Story, section 58, 'properly exists where there is a delegation of authority to do a single act; a general agency properly exists when there is a delegation to do all acts connected with a particular trade, business or employment.' " 62 Tenn., 448, 27 Am. Rep., 761.

The distinction between general and special agency is sometimes very unsatisfactory. The supreme court of the United States, in *Butler* v. *Maples,* 76 U. S. (9 Wall.), 766, 19 L. Ed., 822, defined the difference in the two words:

"The distinction between the two kinds of agencies is that the one is created by power given to do acts of a class, and the other by power given to do individual acts only."

In *Walsh* v. *Hartford Fire Ins. Co.* (N. Y.), 9 Hun, 421, it is said:

"A general agent of an insurance company is one who is authorized to accept risks, . . . and settle terms of insurance, and to carry them into effect by issuing and renewing policies."

"The extent of territory which is to be the field of" agency of an insurance agent "is no test of the extent of an agent's authority within that field. His

field of operations may include the whole United States, and yet his powers be special and limited. On the other hand, his field of operations may be confined to a single county or city, and yet his authority within that field be unlimited." *Ermentrout* v. *Girard Fire & Marine Ins. Co.,* 63 Minn., 305, 65 N. W., 635, 30 L. R. A., 346, 56 Am. St. Rep., 481.

"The powers of insurance agents to bind their companines are varied by the character of the functions they are employed to perform. Their powers in this respect may be limited by the companies. The parties dealing with them as to matters within the real or apparent scope of their agency are not affected by such limitations unless they had notice of the same. An insurance agent clothed with authority to make contracts . . . and to issue policies stands in the stead of the company to the assured. His acts and declarations in reference to such business are the acts and declarations of the company." *Rivara* v. *Queen's Ins. Co.,* 62 Miss., 720, 728.

And such an agent is the general agent of the company. *Phoenix Ins. Co.* v. *Bowdre,* 67 Miss., 620, 7 South., 596, 598, 19 Am. St. Rep., 326.

The Murphy Case has been uniformly followed in this State and is cited with approval in the following cases: *Am. Cent. Ins. Co.* v. *McCrea, Maury & Co.,* 76 Tenn., 546, 41 Am. Rep., 647; *Life Ins. Co.* v. *Fallow,* 110 Tenn., 730, 77 S. W., 937; *Suggs* v. *Assurance Society,* 116 Tenn., 670, 94 S. W., 936;

*Foresters* v. *Cunningham,* 127 Tenn., 529, 156 S. W., 192.

In view of the finding of facts by the chancellor, which are concurred in by the court of civil appeals and amply sustained by the record and the foregoing authorities, it is useless to discuss this phase of the case further.

The fourth assignment of error is too broad and general to be considered.

The fifth assignment, to the effect that the chancellor should have stayed the suit on account of the litigation between complainant and Siler, at Jackson, Tenn., wherein Siler was claiming by a cross-bill the right to recover upon a wholly distinct cause of action from that of the alleged shortage, is without merit. There is no allegation of insolvency as to complainant or Siler, and there is no reason shown why the surety company did not file a cross-bill in the instant case or cannot bring later an independent suit.

Upon the entire case, it results that there is no error in the decree of the court of civil appeals, and the writ of *certiorari* is denied.