**Ward W. MATHIS, Plaintiff–Appellant,**

v.

**U.S.I. PROPERTIES, INC., and Gerald L. Houser, John O. Threadgill, and Mehdi Rahmanian, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 20, 1994.

Permission to Appeal Denied by Supreme, Court Feb. 27, 1995.

Ronald L. Grimm and Wallace W. Conaway, Ambrose, Wilson, Grimm and Durand, Knoxville, for plaintiff-appellant.

Cecil D. Meek, Jr., Haynes, Meek, Summers & Ruble, Knoxville, for defendants-appellees John O. Threadgill and Mehdi Rahmanian.

Gary S. Dawson, Campbell & Dawson, Knoxville, for defendant-appellee Gerald L. Houser.

## OPINION

FRANKS, Judge.

The Trial Judge refused to enforce personal guarantees made by defendants Houser, Threadgill and Rahmanian to plaintiff, and plaintiff has appealed.

The Trial Court's summary of the operative facts is succinct, and we adopt:

A Tennessee corporation was formed on September 4, 1987 by the name of U.S.I. Properties, Inc., (U.S.I.). Gerald L. Houser (House), John O. Threadgill (Threadgill), Mehdi Rahmanian (Rahmanian), and Ward W. Mathis (Mathis) were equal shareholders.

The Corporation was formed to develop condominiums.

Plaintiff Mathis was to reside on the premises, make sales, and supervise maintenance.

U.S.I. borrowed one hundred thousand dollars ($100,000.00) from Mathis on December 23, 1987.

The indebtedness was evidenced by a Demand Note in the amount of one hundred thousand dollars ($100,000.00). It was executed by Houser, the President of U.S.I., and provided for interest at the rate of ten percent (10%) per annum and attorney's fees in the event the note was in default.

In July of 1988, Mathis was concerned about the ability of U.S.I. to repay the note and requested the other three (3) stockholders of U.S.I. to execute Continuing Guaranty Agreements whereby each of them would guarantee twenty-five thousand dollars ($25,000.00) of the obligation in forbearance of making demand on the Demand Note.

Threadgill, Rahmanian, and Houser each executed a Continuing Guaranty Agreement promising payment up to twenty-five thousand dollars ($25,000.00) each.[1] . . .

U.S.I. continued to have financial problems, and on September 20, 1989, Mathis requested that he be given a Deed of Trust for one hundred fifty thousand dollars ($150,000.00) to secure the principle and additional unpaid interest.

The Deed of Trust was on property owned by U.S.I. in Blount County, Tennessee, which property was being developed as part of the condominium project.

Consideration for the Trust Deed was his forbearance from calling the Demand Note.

The Corporation, by and through its secretary, Threadgill, who is an attorney, executed a Deed of Trust in favor of Mathis as beneficiary.

Mathis recorded the Deed of Trust as advised by Threadgill.

The Trial Court concluded that the parties had agreed that the Trust Deed would "replace the guaranty agreements" and refused to enforce the guarantees.

■ The Deed of Trust that U.S.I. gave Mathis did not revoke the continuing guarantees executed by the defendants. Were the written guarantees ordinary contracts, the Chancellor's findings that the parties orally agreed to substitute the Trust Deed for the guarantees would have been effective. As our Supreme Court long ago stated "A written contract may be changed by parole, and this, although it stipulates that it only shall be changed in writing, the obvious reason that men cannot tie their hands or bind their wills so as to disable them from making any contracts allowed by law, and then any mode in which it may be entered into". *Coopera-*

*tive Stores Co. v. U.S.F. & G. Co.,* 137 Tenn. 609, 612, 195 S.W. 177 (1917) (Citations Omitted).

A different rule, however, applies to guarantees. It has been the settled law in this State since at least 1853 "that a guarantor in a commercial transaction shall be held to the full extent of his engagements and that the rule in construing such an instrument is that the words of the guarantee as to be taken as strongly against the guarantor as the sense will admit." *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 804 (1975).

The parties' agreement to substitute the Deed of Trust on the corporation's property in place of the defendants' guarantees did not revoke the guarantees. These guarantees provided specifically that their only manner of revocation would be in writing. While the Chancellor found that the evidence preponderated for the conclusion that the parties intended to revoke the continuing guarantees, she also found the defendants provided no written revocation of the guarantees.

Both appellant and appellees rely on *First American National Bank of Nashville v. Hall,* 579 S.W.2d 864 (Tenn.App.1978). In that case, the bank loaned money to the Whitehall Vending Company and as a condition of the loan, the bank required each of the three owners of the company to sign individual guarantees. The owners/guarantors subsequently transferred their interests in the company to third parties. As part of this transaction, the guarantors took their debt agreement to the bank where a bank official typed an assumption of indebtedness provision on the back of the loan agreement. The assumption of indebtedness read that the third parties were assuming "full responsibility for the unpaid balance of $36,921.26 remaining unpaid on this contract as of this

---

1. The "Continuing Guaranty" in pertinent part states "In consideration of Ward W. Mathis, hereinafter called 'Lender,' at our request, giving or extending terms of credit to U.S.I. Properties, Inc., hereinafter called 'Borrower,' we hereby give this continuing guaranty to the said Lender, its transferees or assigns, for the payment in full together with all interest, fees, and charges of whatsoever nature and kind, arising out of a note from said Lender to Borrower . . . being payable upon demand with a loan amount of $100,000.00

(One Hundred Thousand and no/100 Dollars), and said guaranty shall be up to the total amount of $25,000.00 (Twenty-five Thousand and no/100 Dollars). This guaranty shall continue in force until written notice of its discontinuance shall be served upon the Lender, but said discontinuance shall not affect liability upon this guaranty on any debt and obligations to the debtor then existing nor the liability of any other party liable in the premises. . . ."

date." The evidence showed that all the parties, including the bank, treated the assumption of the debt by the third parties as a release of the original guarantors from liability under their guarantees. Nevertheless, when the third parties ultimately defaulted on their assumption of the debt, the bank filed suit against the third parties as well as the original guarantors.

In finding the original guarantors liable on the debt to the bank, the Court cited the traditional rule of guarantee that a guarantor in a commercial transaction is held to the full extent of his agreement, and the Court will construe the terms of the guarantee as strongly against the guarantor as the sense will admit. The Court noted the guarantees could be revoked upon written notice or where a later guarantee is given that releases the guarantors on the former one, and the latter is accepted as a substitute for the earlier. The latter basis the Court said was a question of fact. As none of the guarantors had provided such written notice, the Court concluded the guarantees were still valid and significantly said "the assumption of that indebtedness by the [third parties] as a consideration for the purchase of the business does not, standing alone, amount to release of [the original obligors] from their obligation thereunder to the bank."

■ Appellees insist the *First American* case supports their position in that "a later guarantee releases the guarantor on the former one only if it appears the latter one was accepted as a substitute for the earlier," and argue that in this case there is evidence that the Deed of Trust was accepted by Mathis as a substitute for the earlier guarantees. We cannot agree. The C.J.S. passage cited in the *First American* case explicitly refers to a later guarantee releasing a former guarantee. Neither in the *First American* case nor this case, do we have a later guarantee. In each case, the parties attempted to provide either additional debtors or substitute collateral. Neither of these options, however, is the equivalent of a guarantee. A guaranty involves three parties, a promisor, a creditor and a debtor. *See generally* 38 Am. Jur.2 *Guaranty* § 1–7. The Trust Deed was given by the corporation "in order to secure the company's indebtedness to Mr. Mathis." Accordingly, the patent requirement for releasing a former guarantee, the assumption of a latter guarantee, is absent.

■ The Chancellor erred in concluding that Mathis had released the guarantors from their obligation when he accepted the Deed of Trust as additional security on his loan to U.S.I. Properties. The guarantees provided that the guarantors could revoke them only by written notice. Since the guarantors never gave written notice of revocation, the guarantees remain valid. While the parties could have substituted a second guarantee for the former guarantees of the individual shareholders, they did not do so. Mere conveyance of a Deed of Trust operates as a creation of a security interest, rather than the creation of a guarantee. Consequently, because there was neither a release nor a substitution of the original guarantors, each of them remains personally liable to Mathis for the amount of the guarantee.

The judgment of the Trial Court is reversed and the cause remanded for the entry of a judgment consistent with this Opinion.

The costs of the appeal are assessed to defendants-appellees.

GODDARD, P.J. (E.S.), and SANDERS, Senior Judge, concur.

