# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
Assigned on Briefs July 8, 2015

## JIM HICKS ET AL. v. DEBBIE SEITZ ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 13-CV-396-IV     O. Duane Slone, Judge**

---

**No. E2014-02225-COA-R3-CV – Filed September 23, 2015**

---

This is a contract action involving an alleged oral contract between the plaintiffs, landlords Jim Hicks and Betty Hicks ("Landlords"), a married couple who own the rental property at issue, and the co-defendant, Duane Seitz, who located and paid the first month's rent on the property on behalf of his former wife, Debbie Seitz. Ms. Seitz, also originally named as a co-defendant, resided in the home on the property with her adult daughter, her adult daughter's boyfriend, and the daughter's two small children (collectively, "Tenants"). Following several months during which the rent was paid late, partially, or not at all and upon discovery of unkempt conditions in the home, Landlords served Tenants with a notice of eviction. After Tenants had moved from the home, Landlords filed a civil warrant in the Sevier County General Sessions Court against the defendants, Ms. Seitz and Mr. Seitz, alleging unpaid rent and vandalism. Upon hearing, the General Sessions Court entered a judgment in favor of Landlords and against both defendants in the amount of $7,000 plus 5.25% interest and court costs. The defendants appealed to the Circuit Court. Following a bench trial, the Circuit Court entered a judgment in favor of Landlords and against only Mr. Seitz in the amount of $6,285 in damages, plus 5.25% interest and court costs, based upon breach of an oral contract. Having found that Mr. Seitz had entered an oral contract with Landlords but that Ms. Seitz had not, the Circuit Court dismissed Ms. Seitz from the action. Mr. Seitz appeals, contending that the trial court erred by (1) finding an enforceable oral contract between Mr. Hicks and Mr. Seitz and (2) dismissing Ms. Seitz from the action. Because Ms. Seitz was never served with notice of this appeal, we conclude that this Court does not have subject matter jurisdiction over the issue of her dismissal from this matter. As to the trial court's judgment in favor of Landlords, we discern no error and affirm.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
## Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

David W. Webb, Sevierville, Tennessee, for the appellant, Duane Seitz.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, for the appellees, Jim Hicks and Betty Hicks.

**OPINION**

I. Factual and Procedural Background

Landlords own title to the subject rental property, a three-bedroom home located on a small farm on Union Valley Road in Seymour, Tennessee ("the Rental Property"). Landlords inherited the Rental Property from Ms. Hicks's mother, who had resided in the house on the property prior to her death. Throughout the proceedings, Landlords resided in a home located approximately four miles from the Rental Property. In the late summer or early fall of 2012, Mr. Seitz learned through Mr. Hicks's sister that the Rental Property was available for tenancy. He contacted Mr. Hicks and expressed his interest in the Rental Property as a place for his former wife, co-defendant Debbie Seitz, to live with the defendants' adult daughter and their two minor grandchildren.[1] Ms. Seitz and her family resided in Kentucky at the time but planned to relocate to Tennessee. Meanwhile, Mr. Seitz had remarried and resided with his current wife in Maryville, Tennessee.

Upon Mr. Hicks's showing the Rental Property to Mr. Seitz, the two men engaged in a conversation in the front yard of the Rental Property. The nature of the oral agreement reached during this conversation lies at the heart of the instant action. The date of this meeting is not apparent from the record. Although Mr. Seitz's current wife, Mr. Hicks's sister, and Mr. Hicks's brother-in-law were present during the discussion, only Mr. Hicks and Mr. Seitz testified as to their respective understanding of the resultant agreement. Despite having created no written record of the rental agreement, several points that Mr. Hicks and Mr. Seitz discussed are undisputed. Testimony indicated that Mr. Hicks agreed to accept $600 in monthly rent and that he understood the tenants would be Debbie Seitz, her daughter, her daughter's boyfriend, and her daughter's two small children. Undisputed testimony also established that Mr. Hicks delineated Landlords' rental conditions that they would expect the house and yard to be maintained in good condition and would not allow Tenants to keep pets on the Rental Property. Landlords reduced the rent by $100 during the months of January and February to compensate for higher utility costs, which would be Tenants' responsibility. Mr. Hicks understood that Mr. Seitz had no plans to reside at the Rental Property himself.

---

[1] Because Mr. Seitz has remarried, we will reference co-defendant Debbie Seitz's first name where necessary for clarity.

The substantive point in contention is the characterization of Mr. Seitz's role in the rental agreement. Mr. Seitz acknowledged at trial that he informed Mr. Hicks during their intial meeting that he would convey Landlords' expressed conditions to Tenants. Mr. Seitz denied having made any promise or guarantee that the rent would be paid and the Rental Property kept in good condition. According to Mr. Seitz, he told Mr. Hicks: "This is between you and them [Tenants]." In contrast, Mr. Hicks explained that he understood the oral agreement to be that Mr. Seitz would guarantee payment of the rent and maintenance of the Rental Property. Mr. Hicks testified specifically that Mr. Seitz "was the man that [he] dealt with." The initial meeting ended with Mr. Seitz's tendering Mr. Hicks a check in the amount of $600 for the first month's rent in exchange for keys to the rental property.

According to Mr. Seitz, he traveled to Kentucky the day after paying Mr. Hicks the first month's rent and assisted Tenants in their move from Kentucky to Seymour, Tennessee. He stated that "[a]s soon as [he] picked them up, they reimbursed [him]" for the $600 rent payment. Mr. Seitz recalled the month that Tenants moved into the Rental Property as October 2012, while Mr. Hicks remembered it as "about mid, late summer of 2012." The exact date the rental period commenced is not significant to the issues presented and does not affect the instant analysis.

Following Tenants' initial occupation of the Rental Property, Ms. Seitz made the rental payments to Landlords for several months. It was undisputed, however, that Ms. Seitz was often late in paying the rent and sometimes paid only a portion at a time. Mr. Hicks testified that he called Mr. Seitz "a time or two when Debbie was late" with the rent and that Mr. Seitz agreed to talk to his former wife about the rent. When questioned regarding whether he expected Mr. Seitz to pay the rent himself, Mr. Hicks responded: "I didn't expect him to if she was going to pay it, but I expected him to see that it was paid." Mr. Seitz acknowledged that Mr. Hicks had called him once to inform him that Ms. Seitz was late with payment of the rent. According to Mr. Seitz, he told Mr. Hicks he "would contact Debbie and find out what's going on and have her contact him." Mr. Seitz never paid the rent personally after his initial $600 payment to Mr. Hicks for the first month's rent. As to property maintenance, Mr. Seitz testified that he occasionally mowed the lawn at the Rental Property because it was conveniently located near his mother-in-law's home, where he regularly mowed. He further explained that if he had sufficient time, he would mow the lawn at the Rental Property "just to help [Tenants] out."

In March 2013, Mr. Hicks delivered an eviction notice to Tenants at the Rental Property. He did not provide notice of the pending eviction directly to Mr. Seitz. When questioned regarding what prompted him to demand that Tenants vacate the premises, Mr. Hicks stated:

When I went down to collect the rent, probably the last time I got any money out of Debbie, she gave me $400 out of the $600. When she opened the door, I looked down the hall and I saw the house was a pretty good mess. I saw cats running from one room to another and I knew there wasn't supposed to be any animals in the house. Behind the house, there was a pile of trash that you could load a pickup truck with where rats and possums was digging and bedding in it.

I had done talked to the son-in-law or boyfriend about getting rid of that mess. He finally did clean that mess up. Two or three weeks later, it was just as bad as it was before.

Tenants did not make any rental payments to Landlords after paying $400 toward $600 due for the March 2013 rent. Tenants subsequently vacated the Rental Property during the first week of May 2013.

During the weekend of May 5 and 6, 2013, Mr. Hicks visited the Rental Property after he observed that Tenants had moved out. According to his testimony, he was unable to enter the home because Tenants had locked a large dog inside. Upon further inspection, he observed damage to the property, however, and called the Sevier County Sheriff's Office. On May 7, 2013, a sheriff's deputy completed an incident report and took photographs of damage to the home. Tenants previously had returned at some point and retrieved the dog. The cats, however, which according to Mr. Hicks had been feral cats adopted by Ms. Seitz, remained on the Rental Property. Consequently, Mr. Hicks called animal control authorities, who removed the cats. Mr. Hicks related that when he first arrived at the Rental Property after Tenants had removed the dog, he had to "shovel" dog feces out of the home.

In addition to finding garbage and debris throughout the home and yard, Mr. Hicks described extensive damage to the Rental Property, including deep scratches on every door, ruined carpet, and cigarette butts thrown in the kitchen sink. Overpowering odors of cat urine and cigarette smoke permeated the interior of the house. Landlords presented photographs, admitted into evidence without objection, corroborating the damage to the Rental Property. Furthermore, Mr. Hicks's undisputed testimony indicated that Tenants removed a refrigerator, washing machine, and lawn mower belonging to Landlords. Mr. Hicks's testimony and a photograph also demonstrated that Landlords' dryer was thrown onto a "pile of junk" in the yard. Mr. Hicks further testified that the dryer's lid had been twisted to the point that the dryer would no longer operate. The outbuilding designed to shelter the lawn mower was likewise full of garbage and debris.

4

On May 9, 2013, the Sevier County General Sessions Court issued a civil warrant against Ms. Seitz and Mr. Seitz upon Landlords' allegations of theft, vandalism, and other damages to the Rental Property. The warrant was served on June 9, 2013. Following a merits hearing, the General Sessions Court entered a judgment on June 24, 2013, in favor of Landlords and against both defendants in the amount of $7,000 plus 5.25% interest and costs of the suit. Represented jointly by counsel, Ms. Seitz and Mr. Seitz timely appealed to the Sevier County Circuit Court ("trial court").

The trial court conducted a bench trial on September 23, 2014. At the outset, the defendants' former joint counsel announced that he was representing only Mr. Seitz. Ms. Seitz appeared, representing herself. She did not testify. In response to the trial court's invitation to Ms. Seitz to present her case at the close of Mr. Seitz's proof, Ms. Seitz declined to present any proof or make any substantive statement.

During the trial, Landlords requested total damages in the amount of $7,690. Specifically this amount included:

| | |
|---|---|
| Unpaid rent: | $1,400 |
| One month's rent lost due to need for repairs and cleaning: | 600 |
| Cleaning, painting, replacing flooring, and removing debris: | 4,090 |
| Replacement of appliances: | 1,600 |
| Total: | $7,690 |

Upon close of all proof, the trial court found that Mr. Seitz had entered into an oral contract with Mr. Hicks in which Mr. Seitz promised that the monthly rent would be paid and the Rental Property maintained in good condition. The court further found that although Ms. Seitz had resided at the Rental Property, she had not been a party to the oral contract. The court determined and assigned liability on the part of Mr. Seitz but not concerning Ms. Seitz. On October 28, 2014, the court entered a final judgment, awarding in favor of Landlords and against Mr. Seitz total damages in the amount of $6,285 plus 5.25% interest and court costs. The court dismissed Ms. Seitz from the action. Mr. Seitz timely filed a notice of appeal to this Court and served a copy of that notice upon Landlords. Mr. Seitz did not, however, serve Ms. Seitz with a copy of the notice of appeal, and Ms. Seitz has not participated in this appeal.

## II. Issues Presented

Mr. Seitz presents two issues on appeal, which we have restated as follows:

1.    Whether the trial court erred by finding that Mr. Seitz entered a valid and enforceable oral contract with Landlords.

5

2.     Whether the trial court erred by dismissing Ms. Seitz from the case at bar, and alternatively, whether the trial court erred by declining to dismiss the entire cause of action upon its finding that Ms. Seitz should be dismissed as a party.

## III.  Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011). While "the amount of damages to be awarded in a particular case is essentially a fact question," "the choice of the proper measure of damages is a question of law." *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

## IV.  Enforceable Oral Contract

Mr. Seitz contends that the trial court erred by finding that he had entered into an enforceable oral contract with Landlords. He concedes the damages suffered by Landlords and that those damages were caused by Tenants' breach of an oral rental agreement. Mr. Seitz argues, however, that the trial court erred by finding him liable for those damages. He specifically asserts that the court was in error by finding that a guaranty agreement existed in which he guaranteed a rental agreement between Landlords and Ms. Seitz. In contrast, Landlords contend that the trial court's findings describe an express oral contract that Mr. Hicks entered into with Mr. Seitz only, thereby rendering Mr. Seitz liable for damages to the Rental Property. Upon our thorough and careful review of the record, we agree with Landlords on this issue.

As a threshold matter, we note that during opening statements made at trial, Landlords' counsel asserted, without objection from Mr. Seitz's counsel or Ms. Seitz, that the current action was governed by the Uniform Residential Landlord and Tenant Act

6

("URLTA"), specifically Tennessee Code Annotated § 66-28-202, regarding the effect of unsigned rental agreements. The URLTA was not invoked by any of the parties again until Mr. Seitz's argument on appeal that Ms. Seitz was a "tenant" under the URLTA and should therefore not have been dismissed from this action.[2] In determining that Mr. Hicks and Mr. Seitz had entered into an express oral contract, the trial court made no specific findings pursuant to the URLTA. Because it is undisputed that Mr. Seitz did not contract to obtain tenancy for himself on the Rental Property, we will address the oral contract between Mr. Seitz and Mr. Hicks, as determined by the trial court, separately from the issue of Ms. Seitz's tenancy under the URLTA.

To be enforceable, a "contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Staubach Retail Servs.-Se, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). An enforceable contract can be "express, implied, written, or oral . . . ." *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003). As this Court has explained:

> An express oral contract and a contract implied in fact are very similar with the primary difference between them being the manner in which the parties manifest their assent. "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. . . . In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* No. M2001–00288–COA–R3–CV, 2002 WL 31302926, at *10, 2002 Tenn. App. LEXIS 723, at *33 (Tenn. Ct. App. Oct. 11, 2002), *appl. perm. appeal denied* Feb. 18, 2003.

*Id.* at 930.[3]

---

[2] According to Tennessee Code Annotated § 66-28-102(a) (2015), the URLTA is applicable to "counties having a population of more than seventy-five thousand (75,000), according to the 2010 federal census or any subsequent federal census." We take judicial notice for the purpose of applying URLTA to this action that according to the United States Census Bureau official website, the population of Sevier County as of the 2010 federal census was 89,889. *See Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005) (holding that pursuant to Rule 201 of the Tennessee Rules of Evidence, a court may take judicial notice of facts "capable of accurate and ready determination" in its own proceedings).

[3] A second type of implied contract not at issue here is a contract implied in law, or quasi-contract. *See Thompson*, 136 S.W.3d at 930.

A guaranty has been defined by this Court as "a contract by which one person is bound to another for the [fulfillment] of a promise or engagement of a third party." *Villines v. Parham-Lindsey Grocery Co.*, 6 Tenn. App. 254, 261 (1927); *see also Samick Music Corp. v. Hoy*, No. M2008-00441-COA-R3-CV, 2008 WL 4682216 at *2 (Tenn. Ct. App. Oct. 22, 2008). As this Court has further explained, a guaranty is "a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some contract or duty in case of default of another, who in the first instance is liable." *Villines*, 6 Tenn. App. at 261. Three parties are necessary to a guaranty: "a promisor, a creditor and a debtor." *See Mathis v. U.S.I Props., Inc.*, 894 S.W.2d 278, 281 (Tenn. Ct. App. 1994).

In announcing its decision at the close of trial, the trial court explained its specific findings of fact and conclusions of law as follows in relevant part:

> The court is called on to make a judgment as to the credibility of the parties and as part of that, the court has to follow the facts and circumstances of this case. The question is did Mr. Hicks believe that he was entering into an agreement, a contract with Mr. Seitz based on the circumstances and facts as they are in the case.

> The court credits the testimony of Mr. Hicks that he instructed Mr. Seitz what his requirements were, $600 per month, that the rent would be paid, the yard mowed and the house taken care of.

> The court finds that it was implicit in Mr. Seitz['s] conversation with Mr. Hicks that he would, in essence, act as a guarantor for those payments. The court looks to Mr. Seitz['s] own testimony that he was looking for a place to rent to move my daughter back to Tennessee, because they had moved from place to place. I wanted a place for my granddaughters. They needed a place to live. I wanted to provide that for them. I wanted to provide that for them. That's his words.

> I understand your position, Mr. Seitz. The court . . . does find that you did have an agreement with Mr. Hicks to ensure that these payments be made and the other conditions met. . . . The court does find the damages took place.

> * * *

> That total judgment will be in the amount of $6285 at 5.25 post judgment interest.

8

The cause of action against Ms. Debbie Seitz is dismissed. The court finds no relationship with her other than she lived there.

Mr. Seitz bases his assertion that the trial court found a guaranty contract on his interpretation of the court's statement that "it was implicit in Mr. Seitz['s] conversation with Mr. Hicks that he would, in essence, act as a guarantor for those payments." Reviewing the trial court's findings in context and as a whole, however, we conclude that the court found the existence of an express oral contract, not a guaranty, between Mr. Seitz and Landlords. The court specifically determined that Mr. Seitz promised to ensure payment of $600 in monthly rent and maintenance of the Rental Property in return for Landlords' allowing Tenants to occupy the Rental Property. The court emphasized Mr. Seitz's testimony that in obtaining possession of the keys to the Rental Property, he sought to provide a home for his granddaughters. In this regard, Mr. Seitz testified in pertinent part:

> I told [Mr. Hicks] I wanted to get my granddaughters down here, that my granddaughters at the time were 1 and 2 and never had a bedroom of their own, never slept in a bed and I wanted to provide it, that the girls deserved that. I wanted to provide that for them. And with them coming down here, they had money. They were saving money already and figured that would hold them over until they got jobs down here. Mr. Hicks wanted the first month's rent prior to them taking possession of the house or coming down, so yes, I did pay Mr. Hicks $600 so I could get the keys to the house for them before I went to pick them up.

It is undisputed that Debbie Seitz was not present when Mr. Seitz and Mr. Hicks entered into their oral contract. As Mr. Seitz notes on appeal, a guaranty cannot exist without a debtor. *See Mathis*, 894 S.W.2d at 281. The trial court found that Mr. Seitz had bargained with Mr. Hicks to obtain Tenants' access to the Rental Property. The consideration given by Mr. Seitz, in addition to payment of the first month's rent, was his assurance that the rent would be paid and the Rental Property maintained according to Landlords' conditions. *See generally Brown Oil Co., Inc. v. Johnson,* 689 S.W.2d 149, 151 (Tenn. 1985) ("It is well-settled that consideration exists when the promisee does something that it is under no legal obligation to do, or refrains from doing something which it has a legal right to do."). Ms. Seitz was not a party to the oral contract between Mr. Hicks and Mr. Seitz and therefore could not enter that contract as a debtor. We determine that the trial court did not find a guaranty but instead found that an express oral contract existed between two parties only, Mr. Hicks and Mr. Seitz.

9

In addition, testimony demonstrated that the conduct of the parties indicated a contract implied in fact between Mr. Seitz and Landlords to the effect that Mr. Seitz would ensure payment of the rent and maintenance of the Rental Property. On at least one occasion, Mr. Seitz accepted Mr. Hicks's notification by telephone that a rent payment was past due. In response, Mr. Seitz assured Mr. Hicks that he would "find out what's going on" and act as a liaison between Ms. Seitz and Mr. Hicks. Mr. Seitz also contributed to the maintenance of the Rental Property by mowing the lawn on more than one occasion.

Mr. Seitz's assertion regarding the trial court's finding of a guaranty leads to his argument that such a guaranty would be unenforceable pursuant to operation of the Statute of Frauds. *See* Tenn. Code Ann. § 29-2-101(a)(2) (2012) ("No action shall be brought . . . [t]o charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing . . . ."); *In re Estate of Dickerson*, 600 S.W.2d 714, 716 (Tenn. 1980) (concluding that this provision of the Statute of Frauds applies to contracts of guaranty). However, having determined that the trial court found an express oral contract and not a contract of guaranty, we further determine Mr. Seitz's defense of the Statute of Frauds to be without merit.[4]

We conclude that the evidence does not preponderate against the trial court's finding that Mr. Seitz entered into an enforceable oral contract with Mr. Hicks in which he gave his assurance that rent would be paid and the Rental Property maintained. The trial court did not err in holding Mr. Seitz liable for damages incurred by Landlords due to the breach of that oral contract.

## V. Dismissal of Ms. Seitz as Co-Defendant

Mr. Seitz also contends that the trial court erred by dismissing Ms. Seitz as a co-defendant. Mr. Seitz's argument regarding this issue is based in part on his assertion that Ms. Seitz would have been the debtor party in a guaranty contract entered into by Landlords as creditors and Mr. Seitz as promisor. *See Mathis*, 894 S.W.2d at 281 ("A guaranty involves three parties, a promisor, a creditor and a debtor."). Mr. Seitz therefore argues that the trial court should have dismissed the entire action upon the dismissal of

---

[4] There is no indication in the record or the parties' respective arguments that the oral contract between Mr. Hicks and Mr. Seitz was set to be performed for a year or longer. *See* Tenn. Code Ann. § 29-2-101(5) (requiring written documentation "[u]pon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract"); *Boutwell v. Lewis Bros. Lumber Co.*, 182 S.W.2d 1, 3 (Tenn. Ct. App. 1944) ("The mere fact that the contract might continue for more than a year does not bring it within the statute . . . .").

the "debtor." Having determined that the trial court did not find a guaranty contract among the parties but, in fact, an express oral contract between Mr. Seitz and Landlords, we further determine this portion of Mr. Seitz's argument to be without merit.

We also recognize Mr. Seitz's argument that because Ms. Seitz ultimately paid rent directly to Landlords, she was a tenant pursuant to the URLTA. *See* Tenn. Code Ann. § 66-28-202(a) (2015) ("If the landlord does not sign a written rental agreement, acceptance of rent without reservation by the landlord binds the parties on a month to month tenancy."); *see also* Tenn. Code Ann. § 66-28-401 (2015) (delineating a tenant's obligations to, *inter alia,* "[k]eep that part of the premises that the tenant occupies and uses as clean and safe as the condition of the premises when the tenant took possession"). Upon careful review, however, we determine that this Court lacks subject matter jurisdiction to consider the issue of Ms. Seitz's dismissal as a co-defendant. *See Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004) ("Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy.").

Tennessee Rule of Appellate Procedure 3(e) provides that an appeal as of right to a state appellate court "shall be taken by timely filing a notice of appeal with the clerk of the trial court as provided in Rule 4 and by service of the notice of appeal as provided in Rule 5." Rule 4(a) provides in pertinent part that generally "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from[.]" Rule 5(a) provides in pertinent part that "[n]ot later than 7 days after filing the notice of appeal, the appellant in a civil action shall serve a copy of the notice of appeal on counsel of record for each party or, if a party is not represented by counsel, on the party." Therefore, in order for an appellant to satisfy the requirements of Rule 3(e) and take an appeal as of right before this Court, the appellant must satisfy the requirements of both (1) filing a timely notice of appeal pursuant to Rule 4 and (2) serving each party or counsel for each party with a copy of the notice of appeal pursuant to Rule 5.

In civil actions, the timely filing of a notice of appeal is jurisdictional and cannot be waived by the parties or extended by this Court. *See* Tenn. R. App. P. 2 (providing for an appellate court's suspension of the requirements or provisions of a rule of appellate procedure for good cause, with certain exceptions, particularly as relevant here that "this rule shall not permit the extension of time for filing a notice of appeal prescribed in Rule 4[.]"); *Am. Steinwinter Investor Grp. v. Am. Steinwinter, Inc.*, 964 S.W.2d 569, 571 (Tenn. Ct. App. 1997) ("The 30-day rule for notices of appeal is mandatory and jurisdictional and may not be waived."). This Court may, however, suspend the operation of Rule 5(a) provided good cause. *See* Tenn. R. App. P. 2; *G.F. Plunk Constr. Co., Inc. v. Barrett Props., Inc.*, 640 S.W.2d 215, 217 (Tenn. 1982); *see, e.g., Keith v. Regal Real Estate Co.*, No. E2011-00337-COA-R3-CV, 2011 WL 6009625 at *2

(suspending the operation of Rule 5(a) when the defendant was notified by the appellate court clerk within two weeks of the filing of the notice of appeal, "thereby indirectly providing [the defendant] with notice that [the plaintiff] had filed a notice of appeal.").

In the case at bar, our review of the record indicates that Mr. Seitz timely filed his notice of appeal to this Court within thirty days of entry of the final judgment in this action. *See* Tenn. R. App. P. 3(e), (4)(a). Mr. Seitz also timely served a copy of the notice of appeal upon counsel for Landlords. *See* Tenn. R. App. P. 3(e), 5(a). We therefore conclude that the controversy between Mr. Seitz and Landlords is properly before this Court. *See* Tenn. R. App. P. 3(e). Mr. Seitz did not, however, serve the notice of appeal upon Ms. Seitz at any time. Moreover, the record contains no indication that Ms. Seitz received any type of notification of this appeal, whether direct or indirect. We therefore find no good cause to suspend Rule 5(a) in this instance. Because Mr. Seitz failed to comply with the service requirement of Rule 5(a) as to Ms. Seitz, we conclude that this Court lacks subject matter jurisdiction over the controversy involving Ms. Seitz's dismissal from this action. *See* Tenn. R. App. P. 3(e); *Osborn*, 127 S.W.3d at 737.

## VI. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. The costs on appeal are assessed against the appellant, Duane Seitz. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE