# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

---

| | | |
|---|---|---|
| **GARY BIRDWELL, individually and** | ) | |
| **d/b/a BIRDWELL HOME BUILDERS,** | ) | |
| | ) | |
| Plaintiff/Counter-Defendant**/** | ) | Robertson Circuit No. 6973 |
| Appellee, | ) | |
| | ) | |
| **v.** | ) | Appeal No. 01A01-9701-CV-00023 |
| | ) | |
| **BRADLEY S. McKINNEY and** | ) | |
| **ELIZABETH P. McKINNEY,** | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs/ | ) | |
| Appellants. | ) | |

**FILED**

**December 17, 1997**

**Cecil W. Crowson**

**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF ROBERTSON COUNTY
AT SPRINGFIELD, TENNESSEE

THE HONORABLE JAMES E. WALTON, JUDGE

For the Plaintiff/Counter-Defendant/     For the Defendants/Counter-Plaintiffs/
Appellee:     Appellants:

Homer R. Ayers     Steven E. Anderson
Goodlettsville, Tennessee     Nashville, Tennessee

**AFFIRMED IN PART AND
REVERSED IN PART**

HOLLY KIRBY LILLARD, J.

CONCURS:

DAVID R. FARMER, J.

SAMUEL L. LEWIS, J.

OPINION

This case arises out of the construction of a home. The builder filed suit against the homeowners for monies allegedly due him, and the homeowners countersued for alleged contract breaches and defects in construction. The trial court found that both parties had breached the contract and awarded damages to both parties with a balance due the builder. Both parties appeal. We affirm in part and reverse in part.

In 1993, Plaintiff/Counter-Defendant/Appellee Gary Birdwell ("Birdwell") and Defendant/Counter-Plaintiff/Appellants Bradley and Elizabeth McKinney ("McKinneys") entered into a contract for Birdwell to construct a residence for the McKinneys in Robertson County, Tennessee. The contract incorporated by reference plans and specifications and set forth a contract price of $158,472.00, subject to certain "allowances" specified within the agreement. The parties agreed that the purchase price would not exceed this amount so long as the costs listed in the allowance provision did not exceed the amounts stipulated. The contract stated that all modifications must be in writing.

Construction on the house began in August of 1993. The parties continually bickered about numerous alleged deviations during the construction. Bradley McKinney began to closely oversee the progress of the construction and even began to pay some of the sub-contractors directly for allowance items. The McKinneys moved into the house in May 1994 before the home was completed, and changed the locks. At the scheduled closing in June 1994, the McKinneys refused to pay the full contract price. Consequently, Birdwell filed this lawsuit.

The McKinneys had already tendered to Birdwell $92,000.00. In his lawsuit, Birdwell claimed that he was owed the total sum of $41,877.65. This included the remainder of the contract price due (less allowance items for which the McKinneys had reimbursed him) plus $4,151.65 for the McKinney's alleged refusal to pay him for certain modifications or additions to the agreement.

The McKinneys countersued for alleged breaches of the contract and alleged defects in construction committed by Birdwell. The McKinneys sought damages totaling $22,184.86. Both parties sought attorneys' fees.

After a bench trial, the trial court held that both parties had breached the contract. The trial court found that Birdwell had breached the contract by varying from the plans. It also found that the McKinneys had breached the contract, by refusing to pay for construction performed, making modifications during the construction, and interfering with Birdwell's ability to perform.

The trial court found that Birdwell had incurred damages totaling $40,377.11. The trial court also found that the McKinneys incurred damages of $29,957.01 as a result of Birdwell's breach. After setting off the damage awards, the trial court held that the McKinneys owed Birdwell a total of $10,420.10. Neither party was awarded attorneys' fees. Both parties now appeal the decision of the trial court.

On appeal, both parties raise a host of issues. The McKinneys assert that the trial court erred by considering alleged oral modifications to the contract, when the contract explicitly states that all modifications must be in writing. In addition, the McKinneys argue that the trial court erred by failing to credit the McKinneys the sum of $4200.00 for allegedly having paid Birdwell twice for certain bathroom fixtures. The McKinneys further contend that the trial court erred by failing to credit the McKinneys for damages caused by alleged defects in construction caused by Birdwell. The McKinneys also assert that the trial court erred by not awarding them attorneys' fees and a contractor's profit.

Birdwell alleges on appeal that the trial court erred in finding that Birdwell had breached certain provisions of the contract. Birdwell also contends that the proper measure of damages should have been the difference between the value of the house if properly built and the value of the house in its defective condition. Birdwell further argues that the trial court erred in calculating damages based on the testimony of the McKinneys' expert. Birdwell also seeks attorneys' fees, prejudgment interest amounting to $5,177.34, and $5000.00 for "additional time spend [sic] and delays in the performance of the Contract caused by McKinney's actions."

Our review of the findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual findings unless the preponderance of the evidence is otherwise. Tenn. R. Civ. P. 13(d). Questions of law are *de novo* with no presumption of correctness. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

The McKinneys assert first that the trial court erred in considering alleged oral modifications to the contract, in light of the express contractual provision that all modifications to the contract must be in writing and signed by both parties. The McKinneys argue that this clause should be strictly enforced.

It has been held that written contracts may be orally modified even if the contract contains such a clause. *Co-operative Stores Co. v. United States Fidelity & Guaranty Co.,* 137 Tenn. 609,

2

622-23, 195 S.W. 177, 180 (1917). In *Moore Construction Co. v. Clarksville Dept. of Elec.,* 707 S.W.2d 1 (Tenn. App. 1985), the court considered a written change order requirement in a construction contract. The court held that although such a clause is valid, it may be waived. *Id.* at 12-13. According to the court:

> The waiver of a written change order requirement by an owner is not always required to be in writing but may be the result of the parties' conduct on the job. Thus, it is not uncommon for courts to find that an owner has waived a written notice requirement in cases where extra work has been ordered verbally by the owner or the extra work has been performed with the owner's knowledge and without its objection.

*Id.* at 13 (citation omitted).

In the case at bar, the parties' conduct indicates that the clause was waived by the McKinneys. On numerous occasions throughout the construction, the parties orally consented to deviations from the exact specifications set forth in the contract. The record indicates that, in fact, several of these oral modifications were proposed by the McKinneys. The evidence does not preponderate against the trial court's finding that the provision was waived, and the trial court did not err by considering oral modifications to the contract.

On appeal, the McKinneys dispute the trial court's factual findings that the contract was orally modified with regard to: (1) an upgrade in plumbing; (2) stair parts and labor; (3) garage door openers; (4) additional framing for an overhang; (5) an extension of a water line; and (6) additional insulation. Each of these issues is addressed below.

With regard to the plumbing upgrade, the trial court held that the McKinneys were responsible for $1,206.00 in costs resulting from their demand to upgrade the plumbing from chrome to brass. The McKinney argue that no "upgrade" occurred. They claim that the specifications section of the contract ("specifications") provides that several plumbing fixtures are "select," meaning that the homeowner chooses the desired type of fixture. The McKinneys also argue that Birdwell has no standing to assert this claim, since the plumbing sub-contractor is the entity that has not been paid, and this sub-contractor has not filed a claim with Birdwell.

After reviewing the contract and the evidence in the record, the evidence preponderates in favor of the trial court's finding that the McKinneys sought an upgrade from the specifications in the contract. The McKinneys' argument that Birdwell has no standing is without merit, since the record indicates that Birdwell is liable to the sub-contractor for this cost.

3

The trial court held that the McKinneys were liable for $1,214.11 in additional costs associated with stair parts and labor. The McKinneys argue that an allowance item specified "floor coverings," and this did not include the handrails and the spindles. Thus, the McKinneys paid for the costs connected with the steps and the risers but not for the handrails and spindles.

The evidence indicates that Birdwell did not satisfy his burden of proving that the McKinneys were responsible for this cost. A plain reading of the term "floor coverings" in the allowance provision of the contract cannot be construed to include the handrails and spindles. The specifications call for the installation of these handrails. Furthermore, the record does not demonstrate that the McKinneys demanded an upgrade from the specifications set forth in the contract. Therefore, the trial court erred in awarding Birdwell $1,214.11 for these costs.

The trial court held that the McKinneys owed Birdwell $436.00 for upgrading the insulation in the walls of the home. It is undisputed that the specifications called for R-18 insulation. When Bradley McKinney noticed that the sub-contractor was installing R-13 insulation, he demanded that it be removed and replaced with R-18 insulation. Birdwell testified that he had intended to achieve R-18 insulation by installing an R-5 wallboard, along with the R-13 insulation. As a result of McKinney's actions, the house now has an insulation class of R-20.

The trial court found that the McKinneys unilaterally modified the contract and, therefore, were liable for these costs. In addition to arguing that the contract can not be orally modified, the McKinneys contend that a strict reading of the specifications demands that R-18 insulation be used. Bradley McKinney also testified that he was unaware that Birdwell intended to use R-5 wallboard.

The evidence preponderates in favor of the trial court's determination that the McKinneys unilaterally modified the contract. Therefore, Birdwell was properly awarded $436.00 for this upgrade. The trial court is affirmed on this issue.

The evidence also preponderates in favor of the trial court's finding that McKinney modified the contract by seeking the installment of garage door openers and additional framing for overhangs and the extension of the water line. Thus, the trial court properly awarded Birdwell $268.00 for the openers, $461.00 for the framing, and $66.00 for the water line extension.

The McKinneys also challenge the trial court's refusal to award them damages for certain alleged deviations from the contract by Birdwell. The McKinneys contend that the contract calls for an attic floor covering 1300 square feet. Birdwell constructed an attic floor covering 96 square feet.

4

The trial court found that the McKinneys had not proven that Birdwell breached the contract in this respect, because the contract was unclear on this point.

The McKinneys claim that in the "subflooring" section of the specifications, "attic" is checked, followed by the phrase, "per plan." The McKinneys assert that the plans indicate that 2 by 8 framing is to be used to install a complete attic floor. Instead, most of the attic floor consists of 2 by 6s. The McKinneys argue that the second floor ceiling calls for 2 by 8s and 2 by 10s and that this demonstrates that the attic floor should not consist of 2 by 6s. The McKinneys seeks repair costs of $3500.00.

Birdwell counters that the contract is unclear and that the amount of attic floor installed was customary. Furthermore, the architect for the project, Steve Sloan, testified that the plans were unclear and that he assumed that McKinney and Birdwell would reach an agreement on this issue.

After careful examination of the plans and the transcript, we find that the preponderance of the evidence does not weigh against the trial court's finding that the contract does not clearly require the framing and attic floor asserted by the McKinneys. Thus, the McKinneys have not carried their burden of showing that the plans called for an attic floor consisting of 1300 square feet, and the finding of the trial court is affirmed on this issue.

The McKinneys also challenge the trial court's finding that Birdwell did not breach the contract by installing a shower stall opening only 22 inches wide. The trial court held that the plans did not specify an exact dimension and that Birdwell performed "the best he could under the circumstances."

The McKinneys note that Birdwell conceded that the plans are to scale. Furthermore, Birdwell conceded that "[i]t looks like it probably is 36 inches on there." Nevertheless, Birdwell constructed the opening only 22 inches wide. The McKinneys seek damages in the amount of $900.00, based on the testimony of their expert.

The preponderance of the evidence indicates that the McKinneys have shown that Birdwell breached the contract by constructing the opening only 22 inches wide. The testimony of the McKinneys' expert is the only proof in the record pertaining to damages in this regard. Therefore, the trial court's finding is reversed and the McKinneys are credited with $900.00 on this item.

The McKinneys further claim that the trial court erred by not finding that Birdwell had breached the contract by failing to gravel the driveway all the way to the road. The county road is

2/10 of a mile away from the house. Birdwell graveled the driveway up to a lane leading to the county road. The trial court held that the contract is unclear and that, therefore, Birdwell is not liable.

The McKinneys maintain that Birdwell's expert conceded at trial that it is customary to gravel a driveway all the way to the road. The McKinneys also claim that Birdwell admitted at trial that he did not gravel the "entire driveway." The McKinneys seek a recovery of $2,191.33 for the cost of completing the graveling of the driveway all the way to the road.

Birdwell counters that the contract is silent on this issue. Furthermore, Birdwell emphasizes that since the road is 2/10 of a mile away, graveling up to the lane is all that could be "reasonably contemplated."

The preponderance of the evidence indicates that the McKinneys failed to prove that the contract obligated Birdwell to gravel the driveway all the way to the road. Taken in context, Birdwell admits in his testimony that he did not gravel the entire amount sought by the McKinneys, but he does not admit breaching the contract. The trial court's finding on this issue is affirmed.

The McKinneys next argue that the trial court erred by refusing to award them damages for Birdwell's failure to install two basement windows. The plans call for two "windows per grade." Windows could not be installed, because they would be below the grade of the yard. The McKinneys contend that Birdwell could have installed window wells, which could be below grade.[1] The McKinneys assert that the windows would not be below grade in the first place had Birdwell not constructed the basement ceiling shorter than the height specified in the contract. Alternatively, the McKinneys argue that they should be credited for the costs of labor and materials necessary for the installation of these windows so that Birdwell does not receive a windfall.

The trial court held that Birdwell did not breach this provision of the contract, since it did not provide for window wells. The evidence supports this finding of the trial court. The plans specifically state "windows *per grade*" (emphasis added). Although it is undisputed that the basement ceiling height was shorter than that specified in the agreement, the evidence suggests that the windows would still be below grade if the basement ceiling height had been in strict conformity with the contract. The McKinneys' alternative argument has no merit. It is inevitable that both

---

[1]The McKinneys' expert testified that this expense would cost $2,400.00.

6

parties assume certain risks when a construction contract is executed. In this case, the McKinneys assumed the risk that the windows might not be able to be constructed per grade.

The McKinneys next assert that the trial court erred by not finding that Birdwell breached the agreement by not applying a third coat of paint to all rooms in the house. The trial court held that the McKinneys were only able to prove that a third coat was not applied in two rooms. Therefore, the trial court awarded the McKinneys damages of $107.01 for the cost of painting these two rooms.

The McKinneys argue that Birdwell testified that, although he thought that three coats had been applied throughout the house (except for two rooms), the painting sub-contractor, Tim Lassiter ("Lassiter"), would have superior knowledge. Although Lassiter did not testify, the McKinneys proffered a receipt from Lassiter stating as follows: "Lassiter Painting painted McKinney House on Porter Road: Two coats of paint on walls and ceiling, three coats of paint on trim." Bradley McKinney testified that Lassiter told him that Birdwell did not ask him to bid for three coats of paint in the house.[2] The McKinneys seek an award of $3,850.00 based on their expert's estimate of the cost of adding a third coat to the entire house or, alternatively, an award of $1,000.00 based on an estimate made by Lassiter.

Birdwell responds by emphasizing that Birdwell testified that he believed that three coats had been painted in every room but two. Birdwell also testified that the McKinneys consented to the amount of work that was performed.[3]

We are unable to hold that the evidence preponderates against the trial court's holding concerning this factual finding. This is an issue that involves the credibility of witnesses. The trial judge is in a much better position to assess the credibility of witnesses and, thus, its findings are entitled to "considerable deference." *Tenn-Tex Properties v. Brownell-Electro, Inc.,* 778 S.W.2d 423, 425-26 (Tenn. 1989). Therefore, the trial court's awarding of $107.01 for the two unpainted rooms is affirmed.

The McKinneys next contend that the trial court erred by failing to credit them for having paid Birdwell twice for bathroom fixtures. In the "allowance" provision of the contract, the parties

---

[2]Birdwell did not make a hearsay objection to McKinney's testimony about what Lassiter told him.

[3]Birdwell also argues that Lassiter's receipt is inadmissible hearsay. The McKinneys correctly counter that Birdwell is barred from asserting this defense since he did not raise an objection at trial. *See Pyle ex rel. Pyle v. Morrison*, 716 S.W.2d 930, 936 (Tenn. App. 1986).

7

listed "Cabinets w/ corian tops" with a cost not expected to exceed $9746.00. The McKinneys tendered Birdwell $9864.00 as reimbursement for this allowance. The McKinneys then discovered that this expense was used to pay for the installation of kitchen cabinets as well as a jacuzzi tub, a marble shower, and bathroom vanities.

The McKinneys dispute the trial court's finding that the allowance for "cabinets w/ corian tops" includes the tub, shower, and vanities. According to the McKinneys, they effectively were forced to pay Birdwell twice for these fixtures: as part of the basic contract price and as part of an allowance item. The McKinneys allege that they should be credited $4,200.00, which is the sub-contractor's estimation of the value of the tub, shower, and vanities.

The evidence indicates that the trial court erred by not crediting the McKinneys for this expense. A plain reading of the term, "cabinets w/ corian tops," would not include the tub, shower, and bathroom vanities. These fixtures are called for in the specifications and are part of the basic contract price. Therefore, the McKinneys should be awarded $4,200.00 for this expense.

The McKinneys also claim that the trial court erred by not awarding them expenses associated with installing shelving. "Shelving" is listed as an allowance item at a cost not to exceed $400.00. The McKinneys argue that "installation" is not listed as part of the shelving allowance. Because other allowance items include "installation," the McKinneys contend that the installation of the shelving is not an allowance and, thus, is part of the contract price. The McKinneys also maintain that the other allowance items that did not state "installation" were performed by Birdwell as part of the contract price. The McKinneys seek a recovery of $211.85 for the cost of installing these shelves.

A review of the evidence indicates that the trial court erred by not including this installation cost as part of the contract price. From the terms of the contract, the installation of the shelves was distinct from the allowance for the shelves themselves. Therefore, the McKinneys are entitled to a credit of $211.85.

The McKinneys next allege that the trial court erred by refusing to award them for numerous construction defects that Birdwell acknowledged at trial. Such defects include doors not fastening properly, lack of weatherstripping, dents on doors, a handrail pulled away from the wall, and the failure to install an oval window in the front of the house. Birdwell testified that these defects could be repaired at a cost of between $1,000.00 to $1,500.00. Birdwell's expert estimated the cost of

8

repair at $2,000.00. At a minimum, the McKinneys seek compensation of $2000.00 for these defects.

The trial court refused to compensate the McKinneys for these repairs on the grounds that either they were not Birdwell's responsibility or that "Birdwell's final completion of minor repairs and adjustments were delayed and frustrated by McKinney." The evidence preponderates in favor of this finding. The parties dispute whether some of these defects existed when Birdwell left. The parties also dispute whether Birdwell was given the opportunity to cure the defects after the McKinneys moved into the house early[4] and changed the locks on the house. Such questions relate to credibility and we defer to the trial judge's credibility determination. *Tenn-Tex,* 778 S.W.2d at 425-26. Furthermore, the evidence indicates that the McKinneys orally consented to replacing the oval window with a vent, so that the gable on the roof would not become overheated.

The McKinneys argue that they incurred a water bill amounting to $524.75 resulting from the rupture of the water line by one of Birdwell's sub-contractors. The evidence supports the trial court's finding that the McKinneys failed to prove that Birdwell or his sub-contractors were responsible for the rupture. The trial court is affirmed on this issue.

The McKinneys seek recovery of $350.00 for the repair of alleged defects related to electrical items caused by Birdwell's alleged failure to conform to the plans and make proper installation. The evidence does not preponderate against the trial court's finding that Birdwell is not responsible for these alleged defects. Testimony offered by Birdwell disputes whether the plans called for the installation of certain of these items. Furthermore, the trial court found that the McKinneys had delayed and frustrated Birdwell's efforts to cure all the minor defects.

In addition, the McKinneys claim that the trial court erred by not awarding them a contractor's profit for the repair costs of breaches of the contract caused by Birdwell. The McKinneys' expert calculated this as twenty percent above the ordinary cost. The McKinneys contemplate a general contractor supervising the sub-contractors for additional repairs. In light of the fact that only a few repairs need to be made as a result of breaches committed by Birdwell, it would be unnecessary to hire a contractor to oversee sub-contractors. Thus, it would be

---

[4]This was done in breach of the contract.

unreasonable to award the McKinneys recovery for a contractor's profit. The trial court's decision on this issue is affirmed.

Finally, the McKinneys challenge the trial court's refusal to award them attorneys' fees.[5] The contract provides that if either party breaches the contract, the breaching party is responsible for attorneys' fees. Since both parties breached the contract, neither is entitled to attorneys' fees.

On appeal, Birdwell challenges certain findings made by the trial court that Birdwell breached the agreement.[6] Birdwell alleges that the trial court erred by finding that Birdwell breached the contract by not applying insulation between the first and second floors of the home. The trial court awarded the McKinneys $3,000.00 for this expense.

Although Birdwell admits that the plans called for the insulation, he appears to claim that an oral modification occurred, since it is not customary to install insulation between those floors and because the McKinneys did not voice their objection to Birdwell's failure to install it. The evidence supports the trial court's finding that Birdwell breached the contract by not installing the insulation. The trial court's decision on this issue is affirmed.

Birdwell also appears to contend that the trial court erred in awarding damages of $5,050.00 for repair work on a screened-in deck. The trial court found that Birdwell installed wooden posts for the deck instead of steel posts as provided for in the contract. The trial court also found that Birdwell suffered damages as a result of a defective roof on the deck.

Although Birdwell admits that the contract calls for steel posts, he argues that the wooden posts are customary and McKinney did not object to their installation. Birdwell also alleges that McKinney did not timely provide notice of the defective roof. In addition, Birdwell claims that repair work performed on the roof is excessive and not provided for in the contract.

The evidence preponderates in favor of the trial court's finding that Birdwell is responsible for these damages. The decision of the trial court is affirmed on this issue.

Birdwell disputes the trial court's finding that he breached the contract by constructing the basement ceiling lower than the height specified in the contract. It is undisputed that the contract provides that the basement ceiling is to measure 8'10". Birdwell acknowledged that the actual

---

[5]Both parties challenge this finding.

[6]From Birdwell's brief, it is somewhat difficult to ascertain which specific findings of the trial court that Birdwell contests.

basement height was five inches shorter on one end and eight inches shorter on the other end. Birdwell claims that, before the cement was poured to make the floor, he marked a line on the wall and asked Bradley McKinney if the height was suitable. Birdwell testified that McKinney said "yes."

Birdwell maintains further that the McKinneys waived any objections to the height by not voicing their opposition earlier. Birdwell noted in his testimony that Bradley McKinney stopped construction to voice his objection on numerous occasions throughout the construction process. Thus, Birdwell contends that, had McKinney objected, he would have stopped construction at this time. Birdwell also maintains that once the ceiling is boxed in, it will be able to satisfy the building inspector's requirement of 7'6".

Bradley McKinney denied having the conversation with Birdwell in which he purportedly acceded to the modification of the height of the basement. The McKinneys also insist that timely objections were made to both Birdwell and the architect, Steve Sloan. The McKinneys offered proof by their expert that the ceiling could not be completed at a height of 7'6", as required by the building inspector.

The trial court ruled that Birdwell breached the contract by not constructing the basement in accordance with the agreement. It found that Birdwell did not prove that the McKinneys had orally modified the contract. The trial court awarded the McKinneys $18,350.00, the value of repair as determined by the McKinneys' expert.

The preponderance of the evidence does not indicate that Birdwell satisfied his burden of proving that the McKinneys orally modified this provision. Again, the trial judge is the best arbiter of issues concerning credibility. *Tenn-Tex,* 778 S.W.2d at 425-26. The decision of the trial court on this issue is affirmed.

Birdwell also contends that the trial court improperly awarded damages based on cost of repair instead of on diminution in value. Birdwell cites *Thomas v. Mardis,* Greene Chancery C.A. No. 106, 1987 WL 20189 (Tenn. App. Nov. 25, 1987), for the proposition that if construction of a house has been "substantially performed" and repair would result in "unreasonable destruction," then diminution in value is the proper approach.

11

The *Thomas* case cited *Edenfield v. Woodlawn Manor, Inc.,* 62 Tenn. App. 280, 462 S.W.2d 237 (1970). The *Edenfield* court, quoting from Am. Jur. (2nd), stated:

> As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure if properly completed. Despite this latter rule, however, there is some authority to the effect that damages for a contractor's breach of a contract to construct a dwelling, where it is not constructed in accordance with the plans and specifications, *are* the amount required to reconstruct it to make it conform to such plans and specifications, rather than the difference in loan or market value on the finished dwelling, since unlike a commercial structure, a dwelling has an esthetic value and must be constructed as the owner wants it, even though the finished dwelling may be just as good.

*Id.*, 62 Tenn. App. at 287-88, 462 S.W.2d at 241 (quoting Am. Jur. 2d § 79) (emphasis in original).

*Edenfield* then adopted a rule in which a distinction is made between the standard applied for commercial buildings and the standard for residential dwellings. *Id.*, 62 Tenn. App. at 289, 462 S.W.2d at 241 (citing *Fox v. Webb*,105 So.2d 75 (Ala. 1958)). The court noted that, "in addition to aesthetic tastes of the owner . . . there is also the matter of the owner's comfort and convenience." *Id.*, 62 Tenn. App. at 289, 462 S.W.2d at 242. Therefore, the court held that the cost of repair is the appropriate measure of damages for a residential dwelling. *Id.*

Applying this standard to the case at bar, we find that the court did not err in awarding damages based on the cost of repair. In light of Bradley McKinney's height,[7] it is understandable that a few inches in ceiling height would be of importance.[8] Furthermore, the couple helped design the room in order to accommodate their aesthetic tastes. It is clear that they would be detrimentally affected once the ceiling is boxed in to accommodate the plumbing and once light fixtures are installed.

On appeal, Birdwell also claims that it was inappropriate for the trial court to rely on the damages testimony of the McKinneys' expert, John Ramsey ("Ramsey"). Birdwell asserts that

---

[7]McKinney is 6'5".

[8]Birdwell's brief alleges that, although Bradley McKinney is a tall man, "he is not Krim Abdul Jabbar [sic]," and, thus, the discrepancy in height should not bother him.

Ramsey's estimates are based on homes built in Brentwood, Tennessee, and the Belle Meade area of Nashville. According to Birdwell, these costs are much higher than the cost of construction in Robertson County.

Birdwell failed to raise an objection concerning this testimony at trial. Therefore, Birdwell is barred from asserting this defense on appeal. *Pyle*, 716 S.W.2d at 936.

Birdwell also challenges the trial court's failure to award him $5,000.00 for "additional time spend [sic] and delays in the performance of the Contract caused by McKinney's actions." The preponderance of the evidence supports the trial court's refusal to award these damages.

In addition, Birdwell seeks the recovery of prejudgment interest. Prejudgment interest was not sought in the Complaint. The evidence does not demonstrate that Birdwell is entitled to these damages. The trial court is affirmed on this issue.

In sum, the trial court's computation of damages of $10,420.10 in favor of Birdwell is modified to reflect the following awards credited to the McKinneys:

| | |
|---|---|
| Stairs material and labor | $1,214.11 |
| Shower stall opening | 900.00 |
| Bathroom fixtures | 4,200.00 |
| Shelving installation | 211.85 |
| Total | $6,525.96 |

In all other respects, the decision of the trial court is affirmed. Therefore, the trial court's award of $10,420.10 to Birdwell is modified to $3,894.14.

The decision of the trial court is affirmed as modified. Costs on appeal are taxed equally to Appellant and Appellee, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**DAVID R. FARMER, J.**

_____
**SAMUEL L. LEWIS, J.**

13